## THE STATE ex rel. JONES et al. v. COOK, Secretary of State.

### In Banc, April 1, 1903.

1. **Private Banks: AMOUNT OF CAPITAL IN CITIES.** Under the statutes of this State private banks with a minimum capital of five thousand dollars may be incorporated anywhere in the State. The provision of the statute requiring the capital of incorporated banks in cities of 150,000 inhabitants to be not less than one hundred thousand dollars, and making that provision, "so far as the same is applicable," apply to private banks, does not mean to overthrow the clear provisions of other statutes making the minimum capital for private banks five thousand dollars anywhere in the State.

2. ———: ———: DISCRETION OF SECRETARY OF STATE: FINDING OF FACTS: MANDAMUS. The Secretary of State has no discretion to withhold a certificate from individuals who apply to him for the

right to carry on the business of private bankers in this State if he finds that they have complied with the requirements of the law governing their right to such certificate. His wrongful interpretation of the statutes, holding that they require private bankers to have a capital of one hundred thousand dollars in cities of 150,000 inhabitants, does not determine the applicant's right to such certificate, but that interpretation being a judicial act, the court will, by mandamus, review and correct his error, and compel him to issue the certificate if the relator shows he has a capital of $5,000 and has otherwise complied with the law governing private bankers. Nor is his finding of facts final. Both in the interpretation of the meaning of the statute and in his finding of facts his acts are purely ministerial, and if either is wrong the court can interfere by mandamus.

## Mandamus.

PEREMPTORY WRIT AWARDED.

*Meservey, Pierce & German* for relators.

(1)   Mandamus will lie to compel the Secretary of State to perform a duty not purely judicial.   It has long been well established in this State that mandamus will lie to compel the Secretary of State to perform a duty merely ministerial.   State ex rel. v. Sec. of State, 33 Mo. 293; State ex rel. v. McGrath, 60 Mo. 586; State ex rel. v. McGrath, 75 Mo. 424; State ex rel. v. McGrath, 92 Mo. 355; State ex rel. v. Lesueur, 99 Mo. 552; State ex rel. v. Lesueur, 103 Mo. 262.   The following additional cases are cited as showing what acts have been held by the courts of Missouri to be subject to a writ of mandamus:   To compel the circuit court to reinstate a case on its docket: State ex rel. v. Neville, 157 Mo. 386; to compel the issuance of a merchant's license: State ex rel. v. Ashbrook, 154 Mo. 375; to compel school board to permit attendance of children: State ex rel v. Penter, 70 S. W. (K. C. Court of Appeals) 375.   If the question before the court were as to whether the finding of the Secretary of State as to the amount of cash actually invested could be reviewed by writ of mandamus, the question might be a different one, but we think the law

is now well settled in this State that, having made such investigation and having found that the capital actually invested is ten thousand dollars, the amount claimed, we have a right to submit to this court the question whether the law requires the relators to have more capital than respondent concedes them to have actually invested. (2) The capital invested of ten thousand dollars was sufficient. First, the expression "doing business in this State," used in section 1301, evidently makes the article applicable only after the banks have organized and commenced doing business. Second, the expression "so far as the same are applicable," is used for the very purpose of making it clear that the provisions of the article shall not apply where other express provisions have been made by statute. Third, it would be unreasonable for the Legislature to enact a law providing that no person shall engage in the business of banking as private bankers without a paid up capital of not less than one hundred thousand dollars. Fourth, if the Legislature had intended to nullify the provisions of section 1299, it would have repealed that part of the section in express terms, and, as we have before suggested, the expression "all the provisions of this article," includes all the provisions of section 1299, as well as all of the provisions of section 1278. When counsel for respondent argues that the Legislature intended to annul the provisions of section 1299 by section 1301, he argues that the Legislature has tried to annul them by expressly stating that they shall be applicable. (3) The law does not authorize the Secretary of State to select locations for private banks.

*Edward C. Crow*, Attorney-General, and *Sam B. Jeffries*, Assistant Attorney-General, for respondent.

(1) Kansas City is a municipal corporation of more than one hundred and fifty thousand inhabitants. Of this the courts will take judicial notice. State ex rel. v. County Court, 89 Mo. 237; State ex rel. v. Wof-

ford, 121 Mo. 61; State ex rel. v. Marion County, 128 Mo. 427; Dunne v. Railroad, 131 Mo. 1; State ex rel. v. Dolan, 93 Mo. 467. Section 1278, Revised Statutes 1899, provides: "The cash capital of such corporation shall in no case be less than ten thousand dollars, nor more than five million: Provided, that when such corporation is situated in a city having a population of one hundred and fifty thousand inhabitants or more, the cash capital of such corporation shall not be less than one hundred thousand dollars." Section 1298, Revised Statutes 1899, provides: "Private bankers are declared to be those who carry on the business of banking by receiving money on deposit with or without interest, by buying and selling bills of exchange, promissory notes, gold or silver coin, bullion, uncurrent money, bonds or stocks or other securities, and of loaning money, without being incorporated." Section 1299 provides: "No person or company of persons shall engage in the business of banking as private bankers, without a paid-up capital of not less than five thousand dollars, nor until he or they shall have made a statement, subscribed and sworn to as correct and true before a notary public by each person connected with such business, as owner or partner, setting forth: First, the names of all persons interested in the business and the amount of capital invested; and second, the name in which the business is to be conducted, and the place at which it is carried on; which statement shall be acknowledged, recorded and filed in the manner as provided in this article for the articles of agreement." Section 1301, among other things, provides: "All the provisions of this article shall, so far as the same are applicable, apply to all private bankers doing business in this State." The foregoing sections are all contained in and constitute a part of the same article, to-wit, article 8. The respondent, as Secretary of State, in construing these sections of our statutes, has made the ruling that the proviso contained in section 1278, with reference to the organiza-

tion of banks in cities of 150,000 inhabitants, with at least one hundred thousand dollars capital, applies to private banks as well as incorporated companies. If it be true that the Secretary of State is justified in placing that construction on the statute, then respondent's objection to the taking of any testimony, because of the insufficiency of the petition, should have been sustained. As to whether the policy adopted by the department is warranted by the statute, depends solely upon the exact scope and extent of section 1301, wherein it is provided that, ''All the provisions of this article shall, so far as the same are applicable, apply to all private bankers doing business in this State.'' Under section 2767, Revised Statutes 1889, the provisions above mentioned extended only to sections 2751, 2752, 2753 and 2754, Revised Statutes 1889, but at the revising session of the Legislature in 1899, section 1301 found its way into and became a part of a revised bill. Then it was that the particular sections covered by the provisions of 1301 were stricken out and general words making it applicable to the entire article were employed. It will not do to say that the revised bill does not enlarge the province of the section, else words would have been employed restricting it to the same sections as contained in the revision of 1889. The change was made for a purpose. The object of the respondent, when he came to deal with it in an official manner, was to determine the extent of the enlarged power. That the Legislature had some purpose in extending it to all provisions of the article, so far as applicable, must be acknowledged. This same reason for restricting incorporated banks in cities of 150,000 population, to a capital of not less than $100,000 applies with equal force to private banks. If it be unwise, inexpedient or unsafe to suffer incorporated institutions in such cities to do business with less than $100,000 capital, it certainly should be as equally unwise and unsafe to permit a private bank to be organized in cities of that class with

less capital invested. . By section 1277, Revised Stat-utes 1899, the Secretary of State is required, before is-. suing a certificate to do the business, either to private individuals or incorporated companies, of banking, to satisfy himself that the general provisions of the stat-utes in relation to banks and the banking business have been complied with.   By this section certain quasi-ju-dicial powers are lodged in that officer, not only as to the sufficiency of the capital invested, but also as to the construction or interpretation of a statute involving the administration of his office and governing his official conduct.    Dunlap v. Black, 128 U. S. 40; Perry v. Rey-nolds, 53 Conn. 527; Goddard v. Town of Seymore, 30 Conn. 394; American Casualty Co. v. Flyer, 60 Conn. 448.    In construing the words of the act in question, and in assigning to them their proper applications, respond-ent sought to obtain from the words used as well as from the general application imported to them by the Legis-lature, instead of the restricted application accorded them prior to the revised bill of 1899, the full, fair and real intent of the lawmaking power.   In doing this he had a right to consider evils existing, impending or likely to arise and intended to be cured.   The construc-tion of a statute is but a judicial reading of intent of the lawmaking authority, as exhibited by the words used to express that intent.   State ex rel. v. Slover, 126 Mo. 652; Railroad v. Tracy, 126 Mo. 472; Bryant v. Russell, 127 Mo. 422; Smith v. People, 47 N. Y. 330. It is a familiar canon of construction that, in case of any uncertainty, a reasonable and beneficial meaning should be ascribed to a law, where its literal sense will fairly permit it.   And the result and consequence of any proposed interpretation of a statute may properly be considered as a guide to the probable intent of its language, when subject to construction.   State ex rel. v. Slover, 126 Mo. 652.   Moreover, no law should be given such construction as to permit a public wrong or mischief, unless its language is so lucid and free of

doubt as to permit of no other. State ex rel. v. Slover, supra. The general purpose and object of the statute is never to be overlooked in its construction and application, and it should always have a reasonable interpretation. Ross v. Railroad, 111 Mo. 18; Carson-Rand Co. v. Stern, 129 Mo. 381. Statutes will be construed in reference to the subject-matter, the objects which prompted and induced their enactment and the mischief they were intended to remedy. Neman v. Smith, 50 Mo. 525; State v. Develing, 66 Mo. 375; Spitler v. Young, 63 Mo. 42. (2) The Secretary of State has a discretionary duty to perform in the issuance of certificates of authority to bankers, and that discretion can not be controlled by mandamus proceedings. Section 1277, Revised Statutes 1899, requires the Secretary of State to find that all the laws of the State have been complied with before granting certificates to transact banking business. In addition to the foregoing, he is, by the provisions of article 8 of chapter 12, Revised Statutes 1899, relating to the examination of banks and their manner of conducting business, given full charge of our banking laws. From a governmental standpoint he represents the sovereign head of all the financial institutions known as banks and trust companies in the State. On account of the character of his office, and the qualifications necessary thereto, the legislative branch of our State has placed in his hands the enforcement and administration of our banking laws. In the administration of those laws he is called upon to interpret or construe them; and when he does interpret them, in obedience to official duty, without oppression or corruption, fraud or favoritism, his judgment is final, and mandamus will not lie to work an appeal from his finding. American Casualty Co. v. Flyer, 60 Conn. 448; State ex rel. v. Benton, 25 Neb. 834; Ins. Co. v. Wilder, 40 Kans. 561; State ex rel. v. Moore, 43 Oh. St. 103; Dunlap v. Black, 128 U. S. 40. In the case of Dunlap v. Black, supra, the court said: "The court will not interfere by

mandamus with executive officers of the government in the exercise of their ordinary official duties, even where those duties require an interpretation of. the law, the court having no appellate power for that purpose.'' In Ex parte Thompson, 52 Ala. 98, the rule is stated thus: ''When the power is clearly defined and enjoined, does not involve the exercise of discretion or judgment, and no alternative is left to the officer charged with its execution; when he must act without enquiry, and without evidence, and the mode of action is expressly declared, the power is purely ministerial. When, however, the power involves the exercise of judgment and discretion; when it is to be exercised only in an ascertained event, and on the occurrence and existence of particular facts, and the officer charged with the execution of the power must determine whether the event has arisen, or the facts exist requiring its exercise, then the power is judicial, or in its nature judicial.'' In U. S. v. Guthrie, 17 How. (U. S.) 285, we find the following language: ''The only acts to which the power of the courts by mandamus extends, are such as are purely ministerial, and with regard to which nothing like judgment or discretion, in the performance of his duties, is left to the officer; but that wherever the right of judgment or discretion exists in him, it is he, and not the courts, who can regulate the exercise.'' It seems to be held by all authorities, that the writ of mandamus can only issue to some officer required by law to perform some mere ministerial act, or to a judicial officer to require him to take action; but not in a matter requiring judgment or discretion, to direct or control him in the exercise of either. The three cases above cited and from which we have just quoted, contain the correct and recognized rule in this country as to the extent, authority and jurisdiction of writs of mandamus.    The principles there enunciated have been followed in this and other States.   State v. Young, 84 Mo. 90; State ex rel. v. Lafayette County, 41 Mo. 222; State ex rel. v. Byers, 67 Mo. 706; People v. Bernan, 39

Barb. 651; People v. Attorney-General, 29 Barb. 114; Myers v. Ealy, 37 Conn. 103; Taylor v. Kalb, 100 Ala. 603; People.v. McCormick, 106 Ill. 184; State v. Vanwinkle, 43 N. J. L. 145; State v. Supervisors, 64 Miss. 358; Commissioners v. County, 20 Md. 449; State v. Bryan, 26 Ore. 502; Freeman v. Selectmen, 34 Conn. 406; Swan v. Gray, 44 Miss. 393; State ex rel. v. Fairschild, 67 N. Y. 334; Fouch v. Verner, 30 S. Car. 277; Meyers v. Dubuque, 43 Ia. 592; Holiday v. Henderson, 67 Ind. 107; U. S. v. Seaman, 17 Howard 225; Hammond v. Leonard, 74 N. Y. 443; Bailey v. Ewart, 52 Ia. 111; Swan v. Buck, 40 Miss. 268; People ex rel. v. Chapin, 103 N. Y. 635. (3) Heads of departments are necessarily clothed with discretionary powers in administering the affairs of their office. In thus performing their duty they act in an administrative, quasi-judicial manner, rather than in a ministerial capacity. They are required to act with judgment and discretion, and while they may be required by mandamus to act, the manner of their acting or the conclusions reached by them can not be questioned. It is final. American Casualty Co. v. Tyler, 60 Conn. 448; Perry v. Reynolds, 53 Conn. 527; Godard v. Town, 30 Conn. 394; Ins. Co. v. Benton, 25 Neb. 834; Ins. Co. v. Wilder, 40 Kans. 561; Ins. Co. v. Moore, 42 Oh. St. 103; State ex rel v. Carey, 2 N. Dak. 36; Elache v. Ins. Co., 42 Cal. 432; In re Ins. Co., 63 Howard Pr. 54; State v. Thomas, 88 Tenn. 491; Holiday v. Henderson, 67 Ind. 103.

ROBINSON, C. J.—Proceeding by mandamus, on the relation of Lawrence M. and J. Logan Jones, to compel the Secretary of State to grant to them the State's authorization to carry on, as partners, the business of private banking in Kansas City.

The petition of relators, on which the alternative writ herein was issued, states a compliance on their part with all the requirements provided in section 1299, Revised Statutes 1899; its request upon the Secretary

of State that he make or cause to be made an examination to ascertain if said provision of the law had been complied with on part of relators, and if complied with, that he issue to them the State's authorization to engage in said business of private banking, and the refusal of the Secretary of State so to do.

To the alternative writ issued in obedience to the prayer of relator's petition, respondent filed the following return:

"Now comes the respondent, Sam B. Cook, and for a return to the alternative writ of mandamus herein, admits that he is the Secretary of State of the State of Missouri, and that he was Secretary of State at and during all the time mentioned in complainant's petition; admits that as such Secretary of State it is his duty, when an individual banker has filed in his office the requisite certificate to commence business under the laws of this State as a private banker, to examine, or cause an examination to be made as to the amount of capital actually paid up, the manner of transacting business, and to ascertain whether or not all the laws of the State have been complied with in reference to the organization of private banks, and when it is found upon such examination that the provisions of the law have been complied with by the individual or individuals desiring to be authorized to transact private banking business, to grant them a certificate to that effect.

"Respondent further says that the certificate filed by complainants in his office, and referred to in the petition herein, provides that the business to be conducted by said complainants as private bankers shall be at Kansas City; that said Kansas City is a municipal corporation containing more than one hundred and fifty thousand inhabitants, and that under the laws of this State no person or persons can be authorized to transact business as private bankers unless capital be first paid in to the amount of one hundred thousand dollars; that complainants in their said certificate certify and acknowl-

edge to the payment of only ten thousand dollars, and that by reason of said fact said certificate as filed in the office of this respondent is insufficient to warrant said respondent in issuing a certificate to said complainants to do the business of private bankers in said city.

"Respondent denies that complainants have complied with all the provisions of the laws of the State of Missouri required for the purpose of organizing a private bank; denies that as Secretary of State for the State of Missouri he refuses to grant to relators a certificate setting forth the fact that they have complied with the law in the case of individual bankers made and provided, but avers that he is now, and has been at all times, willing to issue said certificate when a proper statement as to the capital invested and evidence of character of business and place of business has been properly acknowledged and filed in his office by complainants.

"Respondent further avers that until said complainants have certified to him that they have paid up one hundred thousand dollars of capital to be invested and used in the transaction of the sole business of private bankers, he is not and can not be required to examine into the condition of such payment, the manner of transacting business, or to issue a certificate to said complainants authorizing them to transact the business of private bankers at Kansas City, said city having a population of more than one hundred and fifty thousand.

"Respondent further states that it is the object and purpose of the complainants to locate and conduct their business as private bankers in the same building, and on the third floor thereof, occupied by them now as a department store in said Kansas City, Missouri, and that said bank, when so organized and run, is to be conducted in conjunction with their said department store, said complainants being engaged in owning and conducting a general department store business at said city, and respondent says that said complainants have

no right or leave under the laws of this State to operate or transact the business of private bankers in connection and conjunction with the business and affairs of their department store at said city, and that they have no statutory or other legal right to transact the business of private bankers in the building and on the same floor of the building occupied in part by them in their department store business.    Respondent avers that the laws of the State of Missouri require banking business to be conducted in its own banking house, separate and apart from any other business.

"Respondent further answering, says that heretofore, to-wit, on the —— day of ————, 1902, after full presentation of the matter and all facts in connection therewith, together with the certificate showing that ten thousand dollars of capital has been paid in, filed in his office, he, upon due consideration of the same, found and determined, that said complainants had not properly qualified themselves under the laws of the State of Missouri to engage in the business of private bankers, and having not so properly qualified, and not having filed a proper certificate showing that one hundred thousand dollars had been paid up, to be used in the transaction of the business of themselves as private bankers, he, the respondent, refused to issue a certificate under the seal of his office, granting to said complainants authority to transact the business of private bankers at Kansas City, Missouri.

"Wherefore, respondent says that he has fully, fairly and officially passed upon and exercised his judgment as to the right of complainants to engage in said business in said city upon the certificate filed by them in the office of this respondent as mentioned in complainants' petition; wherefore and upon consideration of the foregoing this respondent asks to go hence with his costs."

To this return relator replied:

''Now come the relators, and for their reply to the return filed by the respondent to the alternative writ of mandamus herein, admit that the certified copy of the relators' statement set forth that the place at which relators' business as private bankers is to be carried on, is Kansas City, Missouri, and admit that said Kansas City is a municipal corporation containing more than one hundred and fifty thousand inhabitants.

''Said relators, for their further reply, state that Jones Dry Goods Company is a business corporation duly organized under and by virtue of the laws of the State of Missouri, and that as such it is conducting a general merchandise business, or what is generally known as a department store, in said Kansas City, Missouri; that the relators are large stockholders and officers of said corporation, and said relators admit that they have rented a room on the third floor of one of the buildings occupied by said Jones Dry Goods Company as a department store; that said relators proposé to do a private banking business in the room so rented, and that one of the entrances to said banking room will be opened into one of the store rooms of said Jones Dry Goods Company, but relators deny that said banking business is to be conducted in conjunction with said department store, but say that said banking business is to be conducted separate and distinct in every particular from the business of said Jones Dry Goods Company; that said relators will own their own banking house, the fixtures therein, and it is not the object or purpose of said relators to receive deposits or pay checks except over their own counter and in their own banking house.

''Said relators further deny the statement in respondent's return that he is now, and has been at all times, willing to issue said certificate when a proper statement as to the capital invested has been properly made, filed and acknowledged as provided by law, but said relators say that the respondent has arbitrarily and

oppressively, and without any investigation as to the amount of capital actually invested by these relators except as shown by said statement, refused to issue the certificate provided for by section 1277 of the Revised Statutes of Missouri, 1899, solely for the reason that the amount of capital invested by said relators is set out as ten thousand dollars, and has wrongfully, arbitrarily and oppressively assumed to exercise his judgment as to the right of relators to engage in the banking business, and denied the right of these relators to do a private banking business, although said relators have fully complied with all of the provisions of the statute in such cases made and provided. Wherefore said relators pray the court to award its peremptory writ of mandamus as prayed in the petition.''

Ignoring the issues of facts raised by the pleadings as of no consequence in the determination of the right of relators and the duty of the respondent in the premises (each and every one of which issue of fact it may be said, however, in passing, was found in favor of the contention of relators by the commissioner appointed to take testimony and report to the court. his findings thereon), the first point of difference between relators and respondent that we are called upon to consider, is as to the amount of capital necessary to be subscribed and paid in by an individual or individuals, desiring to do business as private bankers in cities of 150,000 inhabitants or more in this State before a certificate of authority should issue therefor by the Secretary of State to the individual or individuals subscribing the funds. The relators assert that any one or more persons in this State who subscribes and swears to the statement as provided in section 1299, Revised Statutes 1899, and pays up a cash capital of $5,000 or more to be used in the business of private banking, is entitled to a certificate of authority from the Secretary of State to that effect, whether the business to be carried on is

Vol 174 mo—8.

in a city of 150,000 inhabitants or more or in the smaller cities or towns of the State; while upon the other hand respondent contends that no one or more parties can be authorized to do business as private bankers, in an. incorporated city in this State with a population of 150,-000 thousand or more inhabitants, unless he or they have paid up not less than one hundred thousand dollars, and subscribed and sworn to the statement provided for in said section 1299.

By section 1298 of article 8, chapter 12, Revised Statutes 1899, private bankers are declared to be ''those who carry on the business of banking by receiving money on deposit with or without interest, by buying and selling bills of exchange, promissory notes, gold or silver coin, bullion, money, bonds or stock or other securities, and of loaning money without being incorporated.''

Section 1299 of said article gives the requirements of those who may engage in such business and reads as follows:

''No person or company of persons shall. engage in the business of banking as private bankers, without a paid-up capital of not less than five thousand dollars, nor until he or they shall have made a statement, subscribed and sworn to as correct and true before a notary public by each person connected with such business, as owner or partner, setting forth: First, the names of all persons interested in the business and the amount of capital invested; and, second, the name in which the business is to be conducted, and the place at which it is to be carried on; which statement shall be acknowledged, recorded and filed in the same manner as provided in this article for the articles of agreement.''

Which means nothing more or less than that if any person or company of persons shall pay up a cash capital of not less than five thousand dollars to be used in the business of banking and shall make and subscribe to the statement provided for therein, he or they shall

be entitled to the privilege of doing a banking business anywhere he or they may desire in this State. The reading of this clear and explicit provision of the statute it would seem of itself should put at rest all possible controversy upon the first proposition presented by respondent's return. The minimum amount of cash capital required of the individual banker or company, is explicit, and the location in the State, where the individual banker or company is entitled to do business with that designated capital is wholly unrestricted, and must of necessity include the city of 150,000 inhabitants or more, as it does the smaller cities and towns of the State.

But says the respondent, since the Legislature by the adoption of section 1278 of said article 8 of chapter 12 has declared against the policy of permitting incorporated companies to engage in the business of banking in cities with a population of 150,000 or more inhabitants, with a less paid-up cash capital than one hundred thousand dollars, it must equally be as improper, unwise and unbusinesslike to suffer a private individual or company of individuals to engage in the same business with a less capital under like circumstances, and from this self-evolved necessity of equality in rights between all character of bankers in this State, he contends that the effect of the provisions of section 1301 of said article 8 aforesaid, is to amend to that extent or to make nugatory the provisions of section 1299 of said article, and to render all parties wishing to engage in private banking in this State in cities with 150,000 inhabitants or more, subject to the provisions of section 1278, supra.

The language of section 1301 is: "All the provisions of this article shall, so far as the same are applicable, apply to all private bankers doing business in this State; and any private banker who shall fail to make and file the statements required by this article of banks incorporated under the provisions of this article . . . shall be deemed guilty of a misdemeanor," etc.

While that of section 1278 is, "'The cash capital of such corporation shall in no case be less than ten thousand dollars nor more than five millions; Provided, that when such corporation is situated in a city having a population of one hundred and fifty thousand inhabitants or more, the cash capital of such corporation shall not be less than one hundred thousand dollars.''

. One section declares the amount of cash capital the individual or copartnership must subscribe and pay up for use in private banking in order to procure the State's certificate of authority to prosecute the business of banking in the State, the other with no more or no less distinctness, the amount of cash capital the incorporated banking company must pay up before it will be entitled to the State's certificate of authority to engage in the same business. All that we need do so far as concerns the present inquiry, is to say, thus the statute has been written and thus it must be obeyed. With the question of the policy of the statute, as with the question of the propriety or impropriety of the distinction made therein in favor of the individual against the incorporated banking company, neither the court nor the Secretary of State has any concern.

The expression, ''so far as the same is applicable,'' contained in said section 1301, seems to have been inserted for the very purpose of making it clear that certain provisions of said article 8, and particularly the provisions of section 1278, should not apply to private bankers, where other express provisions have been made in the same article which do apply directly to them.

As said, when by section 1299, supra, it was provided that no person or company of persons shall engage in the business of private banking without a paid-up capital of not less than five thousand dollars, it meant, that when that amount of capital was paid up by the individual or individuals and was ready for use in such business, he or they subscribing the fund should be en-

titled to pursue that calling, and to that end were entitled to the State's certificate of authority, regardless of the judgment of the Secretary of State, or any one else, that a larger sum was contemplated when the business was to be carried on in a city with a population of 150,000 inhabitants or more, and regardless of his judgment as to the propriety or impropriety of the proposed location of the business on the third floor of a business house in which relators are conducting a department store; or of respondent's opinion as to the ultimate purpose and object of the parties in organizing said banking company. Relator's right to engage in the business of private banking in this State depends upon what the statute exacts of him to procure, the State's certificate of authority, and not upon respondent's interpretation of the law's meaning, or of what he might think would be a consistent requirement for private bankers in cities with 150,000 inhabitants or more. Relator's rights are to be determined by the law, and not by respondent's construction of it. Facts and not respondent's deductions from them, fix relator's status.

This brings us to the further contention made by respondent, that even though this court should be of the opinion that the construction placed by him upon the statute in question, as to the amount of cash capital necessary to be paid in by individuals or companies wishing to engage in the business of private banking in cities of one hundred and fifty thousand inhabitants or more in this State, is incorrect, still the court has no right by mandamus to review or correct that error, or to control the judgment and discretion vested by statute in respondent as Secretary of State, in the matter of granting certificate to applicants wishing to engage in the business of private banking in this State.

The correctness or incorrectness of respondent's position in this regard must depend for its solution upon our determination of this further proposition, whether the duty respondent is called upon to exercise in the

matter of application for license to do the business of banking is ministerial or judicial; and to that end resort must again be made, to the statute defining respondent's authority and relator's rights in the premises.

That mandamus will not lie to correct or control the judgment or discretion of an executive officer of the State in matters committed to his care in the ordinary discharge of his official duties, whether those duties require the interpretation of law or the determination of facts, is a question too well settled in this State to call for discussion at this time; as is also the rule that mandamus will lie, and judicial power may be invoked, to compel mere ministerial duties imposed by law upon any or all officers of the State to do a particular act or thing upon the existence of certain facts or conditions shown, even though in a limited sense the officer is required to exercise judgment before acting. A ministerial act as applied to a public officer, is defined to be an act or thing which he is required to perform by direction of legal authority upon a given state of facts, independent of what he may think of the propriety or impropriety of doing the act in the particular case. With this definition in mind, what appears the character of the act which respondent was requested by relator to do, and the doing of which respondent having refused, relators seek to compel by mandamus? Referring again to the provisions of the statute above mentioned, we find that by section 1298 it is declared who are private bankers and what they may do without being incorporated under the law of this State.

By section 1299 is provided the requirements of parties or companies who desire to engage in the business of private banking as follows:

"No person or company of persons shall engage in the business of banking as private bankers, without a paid-up capital of not less than five thousand dollars, nor until he or they shall have made a statement, subscribed and sworn to as correct and true before a notary

public by each person connected with such business, as owner or partner, setting forth: first, the names of all persons interested in the business and the amount of capital invested; and, second, the name in which the business is to be conducted, and the place at which it is to be carried on; which statement shall be acknowledged, recorded and filed in the same manner as provided in this article for the articles of agreement.''

By section 1277 of same article and chapter, supra, it is provided:

''When any banking corporation, individual or trust company shall have filed with the Secretary of State the requisite certificate prior to commencing business under the laws of this State, and shall have provided the cash required by law, the Secretary of State shall, before such corporation, individual banker or trust company shall be authorized to commence business, examine or cause an examination to be made in order to ascertain whether the requisite capital of such bank, banker or trust company has been paid in cash. The Secretary of State shall not permit such bank, individual banker or trust company to complete the filing of papers or to begin business until it appears to his satisfaction from such examination or other evidence satisfactory to him that the requisite capital has been in good faith subscribed and paid in in actual cash and is ready for use in the transaction of the business of the proposed institution. In case the Secretary of State shall find that all the provisions of the law have been complied with by the institutions herein named which desire to be authorized to do business, he shall grant them a certificate to that effect.''

As seen, in section 1277 are set out and contained all the authority, duties and requirements of respondent in the matter of applications by persons or corporations wishing to engage in the business of banking in this State and seeking the State's authorization to prosecute said business, and that authority is nothing more or less

than to refuse such person or corporation the right to complete the filing of papers in his office, if in the exercise of the duty imposed upon him by said section, he finds that the requisite cash capital has not been subscribed and paid in by the individual or individuals or corporations and held ready for use in the transaction of the business proposed, or that the other preliminary steps required of the applicant under section 1299, supra, have not been properly pursued. By the closing language of section 1277 the duty of respondent in the premises is expressed in mandatory terms, and he is left with no discretion or judgment whatever. "In case the Secretary of State shall find all the provisions of law have been complied with by the institutions herein named, which desire to be authorized to do business, *he shall grant them a certificate to that effect.*" His authority in the premises is to make or cause to be made an examination to ascertain if the requirements of the statute on part of the applicant have been met and performed. His duty, if he finds the applicant or applicants have complied with the law's requirements in these particulars, is imperative, to issue the State's certificate of authority required. His duty is purely ministerial under every definition of that term, made by text-writers or announced by the courts.

The Secretary of State can not say to defeat the right of the individual wishing to engage in the business of private banking in a city of this State with a population of one hundred and fifty thousand inhabitants or more, "I interpret the statute to mean that you are required to pay in cash for use of such business, the sum of one hundred thousand dollars." His erroneous interpretation of the statute does not determine the individual's right in the premises. That the court must determine. Nor can he say in order to withhold the certificate enjoined on him to issue where a given state of facts exists, "I do not so find the facts as the applicant has stated," and have that finding go as a final

judgment, and as a bar to the applicant's right to pursue a lawful calling when in truth and in fact a full compliance with all the statutory requirements had been met and performed. The facts and not respondent's arbitrary finding thereon must ultimately determine both his duty and relator's right in the premises.

The respondent is to look to the evidence presented and to act on the facts shown, but with no uncontrollable power of judgment as to the facts or the law. On his finding the existence of the statutory facts required of the applicant, the statute is peremptory in its requirement of respondent that he issue the State's certificate of authority, and that too as above said, without regard to what he might think of the propriety or the impropriety of permitting relators to conduct a banking business in the place designated in their statement or the motive that prompted its selection or the ultimate purpose the relators may have in view in so conducting said business. By section 1277 respondent is clothed with no judicial power; by it he is invested with no discretion as to the course he shall pursue upon the facts presented, other than the discretion necessarily involved in determining by count the amount of cash capital paid up by the applicant or applicants, and that he or they have properly made, subscribed and sworn to the statement required in said section.

Since by the finding of the commissioner, appointed by the court at the request of respondent, to take testimony in the case, it is made to appear that relators have provided and paid up in actual cash ten thousand dollars for use in their proposed business as private bankers in Kansas City, and have in all things complied with the provisions of section 1299, Revised Statutes 1899, to authorize them to engage in such business, the alternative writ heretofore issued is made peremptory. All concur.