STATE OF MISSOURI at the relation of BANK OF NASHUA, Relator-Appellant, v. R. W. HOLT, Commissioner of Finance, Defendant-Respondent.—156 S. W. (2d) 708.

Division One, December 12, 1941.

*Sebree, Shook & Gisler* and *B. F. Boyer* for appellant.

*Roy McKittrick,* Attorney General, and *Lawrence L. Bradley,* Assistant Attorney General, for respondent.

984

HYDE, C.—This action is mandamus in the Circuit Court of Cole County. After defendant (Commissioner) made return to the alternative writ, relator (Bank) filed motion for judgment on the pleadings. The court entered judgment quashing the writ, and relator has appealed.

The following facts were admitted by the pleadings. The Bank was incorporated in 1905 with $12,000 capital stock and was located in Nashua in Clay County. On May 15, 1940, at a stockholders' meeting, properly convened and held, four resolutions were adopted authorizing changes in the Articles of Incorporation of the Bank, as follows:

"1. Changing the bank's name from 'Bank of Nashua' to 'Bank of North Kansas City;'

"2. Changing the location of the bank from Nashua, Clay County, Missouri, to North Kansas City, Clay County, Missouri.

"3. Increasing the capital stock from $12,000 to $25,000;

"4. Establishing the number of directors as seven shareholders."

These changes, properly certified, acknowledged and recorded, were presented to the Commissioner with application for his certificate showing that the Bank had complied with the provisions of Section

7973, R. S. 1939, relating to changes in its articles of incorporation. The Commissioner refused a certificate on the ground that he was not required to do so unless, after investigation, he determined "that the probable volume of business in the locality to which the bank desires to move can adequately insure and maintain the solvency of said bank in that locality and the solvency of any bank or trust company already existing at such location without endangering the safety of any bank or trust company already in such location or such community as a place of deposit of private or public moneys." He claimed such authority under Section 7942, R. S. 1939. He further stated in his return that he did make an investigation and, as a result thereof, determined that this would not be true, but that, on the contrary, the probable volume of business would be insufficient.

The Bank relies upon Section 7973 as authorizing the change it seeks to make in its articles of incorporation regarding change of location. This section, omitting the requirements for procedure (including notice, stockholders' meeting and certification and recording of the proceedings) which it is admitted were properly fulfilled, was as follows:

"Sec. 7973. Any bank now doing business in this state under any law thereof, general or special, may at any time increase its capital stock to any amount or change the length of its corporate life or avail itself of the privileges and provisions of this article in accordance with the provisions of this article, or otherwise change its articles of agreement in any way not inconsistent with the provisions of this article, with the consent of the persons holding a majority of the stock of such bank, which consent shall be obtained at a meeting of the shareholders, called for that purpose. . . . (Here follow provisions for notice of the meeting, recording of changes and filing of a certified copy thereof with the Commissioner.) Upon the filing of such certified copy the commissioner shall promptly satisfy himself that there has been a compliance in good faith with all the requirements of the law relating to such increase or change, and when he is so satisfied he shall issue a certificate that such bank has complied with the law made and provided for the increase of capital stock, and the amount to which such capital stock has been increased or for the change in the length of its corporate life or any other change provided for in this section. Thereupon the capital stock of such bank shall be increased to the amount specified in such certificate or the length of the corporate life of the bank shall be changed or other authorized change made as specified in such certificate. Such certificate, or certified copies thereof, shall be taken in all the courts of the state as evidence of such increase, or change."

This Section was amended in 1941 (Laws 1941, p. 670) after this case had been decided in the circuit court and while pending here on appeal by adding thereto, at the end of this Section, the following:

"Provided, however, that if the change undertaken by any such bank in its articles of agreement shall provide for the relocation of such bank in another community, the commissioner shall make or cause to be made an examination to ascertain whether the convenience and needs of such new community wherein such bank desires to locate are such as to justify and warrant the opening of such bank therein and whether the probable volume of business at such new location is sufficient to insure and maintain the solvency of such bank and the solvency of the then existing banks and trust companies at such location, without endangering the safety of any bank or trust company in such locality as a place of deposit of public and private moneys, and, if the commissioner, as a result of such examination, be not satisfied in the particulars mentioned, or either of them, he may refuse to issue the certificate applied for, in which event he shall forthwith give notice of such refusal to the bank applying for such certificate. In the event any such certificate shall be refused the commissioner's action in so doing shall be deemed the equivalent of the refusal of an original certificate and an appeal may be taken in the manner and as provided in Section 7942, Revised Statutes 1939, in relation to an appeal from a refusal of an original certificate."

The Commissioner contends that the words "*or otherwise change its articles of agreement in any way not inconsistent with the provisions of this article,*" in Section 7973, "was intended to graft other sections (of the article on Banks) into the provisions of Section 7973, and make them laws relating at such change;" and that the requirements which a new bank must meet in order to obtain a certificate of incorporation, under Section 7942, were referred to by the above-italicized language of Section 7973, and incorporated into Section 7973 by such reference.

The applicable parts of Section 7942, are, as follows:

"When any bank shall have filed with the commissioner a certified copy of its articles of agreement and shall have paid all incorporation and other fees in full, as required by law, and shall have provided the cash required by law, the commissioner shall, before such bank shall complete its incorporation, examine or cause an examination to be made, in order to ascertain whether

"(1) the requisite capital of such bank has been subscribed in good faith and paid in actual cash and is ready for use in the transaction of business of the proposed bank,

"(2) . . . the character, responsibility and general fitness of the persons named in such articles of agreement are such as to command confidence and warrant belief that the business of the proposed corporation will be honestly and efficiently conducted in accordance with the intent and purposes of this chapter;

"(3) . . . *the probable volume of business in such location is sufficient to insure and maintain the solvency of the then existing bank*

*or banks in such location, without endangering the safety of any bank in such locality as a place of deposit of public and private moneys.*

. . .

(It is then stated: ''In case the commissioner shall find all the provisions of the law have been complied with,'' and makes favorable findings upon the three questions of fact above set out, he shall grant a certificate of incorporation. Provisions for recording this certificate, etc., follow.)

''. . . In case the commissioner shall not be satisfied, as the result of such examination, that the character, responsibility and general fitness of the persons named in such articles of agreement is up to the standard above provided, *or that the probable volume of business in such locality is sufficient to insure and maintain the solvency of the new bank and the solvency of the then existing banks or trust companies in such locality, without endangering the safety of any bank or trust company in said locality as a place of deposit of public and private moneys*; and on these accounts *or either of them* shall refuse to grant the certificate of incorporation, he shall forthwith give notice thereof to the proposed incorporators from whom such articles of agreement were received. . . .'' (Then follow provisions giving such incorporators the right to appeal to a special board, the decision of which may be reviewed by the courts, which provisions are hereinafter quoted.) (The *italicized portions* of this section are the parts *added by the 1927 amendment* hereinafter discussed.)

The State Banking Department was established in 1907. [Laws 1907, p. 124, l. c. 156.] Prior to that time, incorporation of banks was a function of the Secretary of State, the same as the incorporation of companies for other purposes. In 1915, the whole banking code was revised and amplified. (Laws 1915, p. 102.) Present Sections 7942 and 7973 were adopted as a part of this revision in the same form as at the time this action was commenced, except for the 1927 amendments hereinafter discussed. [Laws 1915, pp. 129 and 145.] The language in Section 7973, upon which the Commissioner relies for his discretionary authority to refuse a change of location (as incorporating in Section 7973, the provisions added to Section 7942 in 1927) was put into Section 7973 in 1915. (''Or otherwise change its articles of agreement in any way not inconsistent with the provisions of this article.'') The authority of the Commissioner to refuse a certificate of incorporation, if he made an unfavorable finding as to ''the character, responsibility and general fitness of the persons named'' as incorporators ''of the proposed bank,'' was likewise put into Section 7942 in 1915. However, there was nothing in it then about probable volume of business at the location specified. Certainly, therefore, there was nothing anywhere in the article on banks, from 1915 to 1927, which was inconsistent with the right of an exist-

ing bank to change its articles of incorporation to specify a new location. Did the 1927 amendments intend to change this situation? That is the decisive question.

Clearly, Section 7942, both by its language and place in the Article on Banks, still relates as always to the original incorporation of new banks. Clearly also Section 7973, by its language, relates only to amending and changing the articles of incorporation of existing banks. Prior to 1927, when the requirement as to determination of probable volume of business was added to Section 7942 (see Laws 1927, p. 217), persons of proper character, responsibility and general fitness, who complied with requirements as to capital, etc., could start a bank in any town or city they desired, regardless of how many banks were already there or what the situation as to volume of business was there. [See State ex rel. Jones v. Cook, 174 Mo. 100, 73 S. W. 489.] When this 1927 change was made in Section 7942 (relating to the incorporation of new banks) no change was made in Section 7973 (applicable to existing banks) except a minor change in the provision concerning notice to stockholders of the meeting at which propositions for changes in the articles of incorporation would be submitted. [See Laws 1927, p. 229.] Prior to this 1927 change in Section 7942, banking business was on the basis of free competition, with regulation as to certain practices only. By this 1927 change in Section 7942 the Legislature commenced to apply the principle of partial regulated monopoly to banking (at least in creating new banks) somewhat in the nature of regulated monopoly as applied to public utilities by the Public Service Commission Act. The 1941 amendment to Section 7973 definitely applies this principle to all banks.

Perhaps it was considered in 1927 that an existing bank's changing its location would bring some business with it because customers would follow it. Moreover, there is an obligation to depositors and the public to preserve the solvency of an existing bank (which, of course, does not apply to a bank which has never started) so that it might be better to let it have the right to move rather than to force its liquidation. Nevertheless, whatever the reason may have been, this provision as to probable business was placed only in the section (7942) relating to incorporating new banks and specifically referred only to the situation caused by incorporating new banks. The provisions for appeal from the Commissioner's findings were left as before (when he only had discretion because of incorporator's character, etc.) that "he shall forthwith give notice thereof *to the proposed incorporators* from whom such articles of agreement were received; who if they so desire, may within ten days thereafter appeal from such refusal to a board composed of the governor, the attorney-general and the state treasurer, which board shall within twenty days thereafter finally decide the matter, and the commissioner shall act in accordance with such decision but the decision of the Board may be reviewed by the

circuit court in the manner prescribed by Section 5890, R. S. 1939.''
Nothing was said about the right of an existing bank to appeal from
a refusal to grant it a certificate of compliance with provisions of
the law concerning change of its articles of incorporation for such
reasons or any reasons. No such right of appeal existed, nor was any
procedure provided therefor, until the 1941 amendment of Section
7973 hereinabove set out. This indicates that no grant of discretion-
ary authority to refuse changes in articles of existing banks was in-
tended.

When the 1941 amendment was made specifically giving the Com-
missioner authority to deny a change of location on the ground of
insufficient business and providing for an appeal from such decision,
it was made as an amendment to Section 7973, and not as an amend-
ment to Section 7942. Thus, we see that the Legislature has at all
times placed and still continues to place in Section 7973 provisions
concerning changing of articles of incorporation of existing banks;
while provisions concerning the granting of certificates of incorpora-
tion to proposed new banks are and have always been kept in Section
7942. This was also true when Section 7942 was amended in 1941 to
broaden the authority of the Commissioner with respecet to his ▮▮▮
discretion in refusing incorporation of new banks. [See Laws 1941,
p. 670.] Therefore, we can find no basis for grafting or incorporating
by reference any part of Section 7942 into the provisions of Section
7973. On the contrary, the intent and purpose to make each cover
entirely different situations and subject matter, and to make each
complete in itself, seems conclusive. We hold that prior to this 1941
amendment the Commissioner had no discretionary authority to re-
fuse an existing Bank (which desired to change its location) a cer-
tificate of compliance with the requirements of the law, relating to
changes in its articles, on the ground of insufficiency of probable
volume of business at place it had specified therein for its relocation.

▮▮ · The contention is made (for the first time on appeal) that the
law does not specifically authorize a bank to change its location and
in the absence of a specific provision, it cannot be done at all. It is
pointed out that Sections 5009-5010, R. S. 1939, specifically provide
for change of location by business corporations. (Section 5441, R. S.
1939, in case of benevolent, religious or educational corporations.)
However, in both cases, this concerns moving corporations out of one
county into another. [For a case recognizing the right of an educa-
tional corporation to change location see Grand River College v.
Robertson, 67 Mo. App. 329; see also, 7 Am. Jur. 44, sec. 31; 13 Am.
Jur. 230, sec. 86, pp. 280-282, secs. 147-148; 18 C. J. S. 584-585, sec.
176c, p. 587, sec. 177.] In the case of business corporations the pro-
cedure, as to the meeting and notice required by Sections 5009-10, is
very similar to that required of banks by Section 7973, ever since 1915,
to ''change its articles of agreement in any way not inconsistent with

the provisions of this article'' (on banks), as well as in any of the ways therein specified. While a three-fourths vote is required by Section 5009 to move to another county, Section 5014, R. S. 1939, seems to authorize any other change in the articles of business corporations, except moving from one county to another, by majority vote and then merely filing such amendments in the office of the Secretary of State. Section 7973, in case of changes in articles of banks, has further requirements as to recording and issuance of certificates of compliance, which are not required in the case of business corporations. It seems reasonable to construe Section 7973 to mean what it says, namely, that it authorizes any change ''not inconsistent with the provisions of'' the article on banks, and, therefore, it is broad enough to include authorization of a change of location, which in this case is within the same county. It is apparent that the Legislature so construed it by the language of the 1941 amendment hereinabove set out. We hold that this is its proper construction.

█ It is also now contended by motion to dismiss, filed since this case was argued and submitted, that the Bank had waived its appeal and all right to the remedy herein sought by proceeding before the appeal board provided in Section 7942, which was done after this case had been finally submitted in the circuit court. We note that the letter of the Bank's attorney to the Commissioner specifically stated that he would present the matter to the board, ''while the case is pending, and without conceding for the purposes of the litigation your power to pass upon the question,'' hoping to reach ''a practical solution.'' Moreover, the doctrine of election of remedies only applies where there are two actual existing alternative remedies available. [18 Am. Jur. 130, sec. 4, also p. 133, sec. 10; 28 C. J. S. 1057, secs. 1-3, p. 1080, sec. 12.] Here the Bank had no such remedy of appeal to the board provided by Section 7942 because, as we have held, such remedy was available only to incorporators of new banks who were refused incorporation. Furthermore, neither the Commissioner nor the board had any authority to refuse an existing bank a certificate of compliance with the laws concerning change of articles of existing banks, if the Bank had actually complied with all requirements of such laws. Therefore, the proceedings of the board in this case were absolutely void and of no force or effect whatever. We hold that there was no waiver of the right to have the matter determined upon this appeal.

█ Perhaps the Legislature should have done in 1927 what it did in 1941, namely: placed the right to change of location of existing banks on the same basis as it did the right to locate a new bank. But it did not do that, and we think there could be a reasonable basis for not doing it. If we should refuse the right to mandamus, the effect would be to make █ the 1941 amendment retroactive back to 1927. If it is not to be made retroactive in effect, the Bank had the right to make

the change in its articles, concerning location, at the time it submitted such change to the Commissioner and requested his certificate of compliance. Its actual compliance is conceded. "Judicial discretion should not be exercised to withhold the writ of mandamus to enforce a clear right conferred by statute, where no other remedy is available to secure such right, for the law and the right are imperative upon the court. To deny the writ in such case would amount to judicial assumption of legislative prerogatives." [34 Am. Jur. 835, sec. 41; see also discussion in State ex rel. Jones v. Cook, 174 Mo. 100, l. c. 118, 73 S. W. 489.]

The judgment is reversed and the cause remanded with directions to enter judgment granting the peremptory writ of mandamus. *Bradley* and *Dalton, CC.*, concur.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as the opinion of the court. All the judges concur.