Application of the LIVE STOCK STATE BANK, ARTESIAN, South Dakota, to move its Main Office to Mitchell, South Dakota and to Establish a Branch Bank in Artesian, South Dakota.

Nos. 11884, 11885.

Supreme Court of South Dakota.

Argued Nov. 18, 1976.

Decided April 7, 1977.

---

**228**

Lawrence J. Piersol, David L. Knudson, of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for applicant and appellant, Live Stock State Bank.

R. Van Johnson, Asst. Atty. Gen., for appellant, State Banking Commission; William J. Janklow, Atty. Gen., Pierre, on brief.

David A. Gerdes, of May, Porter, Adam, Gerdes & Thompson, Pierre, for contestant and respondent, Commercial Trust and Savings Bank.

DUNN, Chief Justice.

On July 15, 1974, Live Stock State Bank of Artesian (Live Stock) applied to the State Banking Commission (the Commission) for permission to move its main office from Artesian to Mitchell and to establish a branch bank in Artesian. The matter was heard by the Commission on November 19 and 20, 1974, and on December 16, 1974. On May 23, 1975, the Commission approved the change of location and establishment of the branch bank. The Commercial Trust and Savings Bank of Mitchell (Commercial) appealed the decision to the Sixth Judicial Circuit Court. It raised five issues on appeal. They were:

(1) That the Commission was without jurisdiction or authority to allow a change of location of a bank charter beyond the town or city for which the charter was originally issued.

(2) That what the applicant was in effect doing was establishing a branch bank in Mitchell without purchasing or merging with one of the existing banks, which is prohibited by law.

(3) That the applicant failed to establish by substantial evidence a "need" of the city of Mitchell for additional banking facilities or the inadequacy of existing banking facilities.

(4) That the applicant, although adequately capitalized for its existing banking authority, failed to establish by substantial evidence that it met the new capitalization proposed in its application.

(5) That the Commission's decision was not concurred in by a majority of the Commission who had been present in person to see and hear all the witnesses, and thus denies the contest-

ant substantive and procedural due process.

The trial court in its Memorandum Decision of January 16, 1976, ruled it would not substitute its judgment for that of the Commission on issues (3) and (4). Additionally, the court disagreed with Commercial's "reverse branching" argument issue (2), holding Live Stock's application clearly indicated the main office would be in Mitchell. The court did, however, hold that the Commission was without authority to approve the bank's move to Mitchell, issue (1). The application was reversed and remanded to the Commission with directions that it enter an order or decision denying the application. Live Stock and the Commission appealed. We reverse.

■ We would affirm the Commission's and trial court's findings on issues (2), (3) and (4) set out above. These findings are fully supported by the evidence. As to issue (5), it appears that a quorum of the Commission was present at all hearings and that the full Commission joined in the decision. While there was no appeal by Commercial, we nevertheless find that the Commission did afford due process in its hearings for all parties concerned.

Live Stock contends that the legislature intended to give the Commission in SDCL Title 51 the authority to comprehensively regulate the banking structure and banking practice. The Commission's authority to approve the transfer of the main office of a chartered bank to another town or city, Live Stock claims, should be viewed as an implied power under this regulatory scheme. Commercial responds that without a specific statute authorizing the Commission to approve such a transfer Live Stock can only move to Mitchell by establishing a branch bank there.

SDCL 51–16–1 establishes the division of banking and finance, charges it "with supervision and control over the activities set forth in this title," and grants it jurisdiction over "such other activities as shall be conferred upon it by the Legislature." This broad grant of power over the banking industry in South Dakota, to be effective,

must include "the authority to employ the means necessary for the exercise of that power." *Board of Regents v. Carter,* 1975, S.D., 228 N.W.2d 621, 629. It also gives the Commission power to act upon applications other than those enumerated in SDCL 51–16–15. "[T]he rule of express mention and implied exclusion should never be applied to defeat a plain legislative purpose." *Rehurek v. Rapid City,* 1937, 65 S.D. 542, 543, 275 N.W. 859. If the Commission does not have the power to supervise a change in location, banks, once chartered, would be free to move without restriction. See: *State ex rel. Bank of Nashua v. Holt,* 1941, 348 Mo. 982, 156 S.W.2d 708.

■ Several states do have specific statutes which permit a bank to relocate upon application and approval by the state banking board. *Application of Bank of Rhame,* 1975, N.D., 231 N.W.2d 801; *Broadway National Bank v. Linwood State Bank,* 1970, Mo., 456 S.W.2d 296; *City National Bank of Austin v. Falkner,* 1968, Tex.Civ.App., 428 S.W.2d 429. Unfortunately, we do not have such a specific statute in South Dakota's banking laws. The only mention of a power to regulate a bank's change in location is SDCL 51–17–21, which states:

"A bank may amend its articles of incorporation in the manner provided under chapter 47–2, upon amendment certified by its president, except that prior approval of the director shall be required for a bank to: change its name or location; acquire or abandon trust powers; change the number or par value of its shares of stock; change the amount of capital; or, extend its corporate existence. Such approval must be based upon a finding that the security of existing creditors will not be impaired by the proposed action. All such amendments shall be filed in the same manner as provided for original articles of incorporation."

Although Live Stock's application was not labeled an attempt to amend its articles of incorporation, that was its practical effect. To amend its articles under SDCL 51–17–21, a bank must proceed in the manner provided in SDCL 47–2 for amending the

articles of incorporation of a business corporation, and it must obtain the prior approval of the director of the division of banking and finance. SDCL 47–2–8 provides in part:

"A corporation may amend its articles of incorporation, from time to time, in any and as many respects as may be desired, so long as its articles of incorporation as amended contain only such provisions as might lawfully be contained in original articles of incorporation at the time of making such amendment * *."

Among the provisions of a bank's original articles of incorporation is the proposed location of the bank. SDCL 51–17–1; SDCL 47–2–5(10). The location is also an important factor to be investigated and examined by the director upon application for a charter, SDCL 51–17–15, and by the Commission in making its decision upon an application, SDCL 51–17–16; *Valley State Bank of Canton v. Farmers State Bank of Canton,* 1973, 87 S.D. 614, 213 N.W.2d 459.

■ To adopt Commercial's reasoning in this case would forever foreclose any bank from moving its main office to a new location. With this we cannot agree. We feel that the movement of the main office of a bank to a new city should be considered by the Commission with the same care and standards as the issuance of a new charter and that Live Stock should have the same burden of proof as an applicant for a new charter. By the same token, Live Stock should not be foreclosed from moving its main charter to a new location where it maintains its burden of proof as would an applicant for a new charter. In effect, this is an application for a new charter in Mitchell, South Dakota, and we feel that the Commission was correct in so considering the application. Thus, we hold that the change of the location of a bank from that location appearing in the original articles of incorporation can only be accomplished by fulfilling the requirements of SDCL 51–17–12 through 51–17–16. These sections were complied with here, and the Commission acted within the powers reasonable and

necessary to discharge its supervisory duties in approving the change of location.

The director in his report and recommendation dated November 29, 1974, pursuant to SDCL 51–17–15, stated in part:

"It appears that under normal economic conditions sufficient deposits would be obtained and favorable earnings generated to support an additional financial institution in Mitchell, however this particular area is apparently suffering from drought and many of the area farmers experienced only about a half of a crop in 1974. * * * Although the proposed location outside of the main Mitchell business district would be more convenient to some businesses and individuals in the area, it appears that both are now being adequately served by the existing financial institutions in Mitchell and nearby communities.

"Overall, there are no clear-cut favorable aspects in the factor of need at the present time, so an *UNFAVORABLE* recommendation is indicated."

This report was considered by the Commission, which has discretion to approve or disapprove applications. SDCL 51–17–16. See also: *Blue Ridge Bank v. State Banking Board,* 1974, Mo.App., 509 S.W.2d 763.

■ As noted above, SDCL 51–17–21 requires the director's prior approval in amending the articles of incorporation for a bank to change its location. While it appears that the director at the time of his report did not recommend approval, a third day of hearings was held, and he signed the Commission's Findings of Fact, Conclusions of Law, Ruling on Proposed Findings, and Decision. One of the Conclusions of Law stated that the issues proposed by SDCL 51–17–15 (upon which the director's investigation and examination are to be based) had been resolved in Live Stock's favor. Without evidence to the contrary we can only assume the director joined in the Commission's approval.

Commercial moved before the trial court to remand the case to the Commission because, according to a letter from the di-

rector to Live Stock, the Commission's approval of Live Stock's application was subject to approval by the Federal Deposit Insurance Corporation. The trial court, because of its decision, did not rule on this issue. From the exhibits in the record, it is not clear whether the FDIC approval was ever obtained. On remand, therefore, the court should consider whether the Commission's final approval was obtained. If it was, the approval should be upheld; if not, the case should be remanded to the Commission.

Reversed and remanded.

WOLLMAN and ZASTROW, JJ., concur.

RAMYNKE, Circuit Judge, dissents.

RAMYNKE, Circuit Judge, was appointed to sit in place of Justice Winans who, at the time this case was orally argued, was a member of the Court.

PORTER and MORGAN, JJ., not having been members of the Court at the time this case was orally argued, did not participate.

RAMYNKE, Circuit Judge (dissenting).

When there is an application for a charter for a new bank, the legislature in SDCL 51–17–15 sets out the complete requirements of the investigation that must be made by the director and reported to the Commission. This includes:

"(4) The need in the community where the bank would be located for banking or banking and trust facilities, or additional banking or banking and trust facilities as the case may be, giving particular consideration to the adequacy of existing bank and trust facilities in the community.

(5) The ability of the community to support the proposed bank, giving consideration to:

(a) The competition offered by existing banks;

(b) The banking history of the community;

(c) The opportunities for profitable employment of bank funds as indicated by the average demand for credit, the number of potential depositors, the volume of bank transactions, and the business and industries of the community, with particular regard for their stability, diversification and size; and

(d) If the bank is to exercise trust powers, the opportunities for profitable employment of fiduciary services.

(6) Such other facts and circumstances bearing on the proposed bank and its relation to the community as in the opinion of the director or the commission may be relevant."

After a thorough weighing and examination of the director's report and all other available relevant information, the Commission shall then approve or disapprove the application. In upholding the right of the Banking Commission to approve the moving of a bank chartered in one city to a location in another city, the majority opinion states "[t]o adopt Commercial's reasoning in this case would forever foreclose any bank from moving its main office to a new location." I feel that is the proper interpretation of the law of the case. When the legislature goes to such lengths to set out all of the considerations that must be met before a new charter may be issued for a bank to open its doors in a new community, how can we possibly say that, after determining the need in a community for a banking facility, by implication (since nowhere in the law is this expressly stated) the bank may now move from the place where its charter was granted without having any study or investigation required by the director or the Banking Commission as to the effects on that community of taking away its bank? According to the majority opinion, only the standards for the issuance of a new charter must be met; in other words, if the Commission determines that there is a need for a new banking facility in one city, then the fact that a city with an existing bank needs that facility will not be considered if the facility wishes to move. Although in this particular case the small town of Artesian

will not be left without a bank as the proposal is to establish a branch bank there, this, however, is not necessarily going to be the case in all instances. The small towns in South Dakota are struggling to keep alive and, if, as in many cases, there is only one bank in the town and that bank decides there is more profit to be made in a larger city, there is absolutely no protection for that small town to have its needs even considered under this proposed rule—if the large town can support another bank that is as far as the investigation needs to go.

It is inconceivable that the legislature would intend such a result. If it had felt it was giving an implied consent to allow banks to move their charter from one town to another, it would certainly have set up standards for investigation and examination of the impact on the town which is to lose its banking facility, as well as for the one which will gain one.

This court held in *Livestock State Bank v. State Banking Commission,* 80 S.D. 491, 127 N.W.2d 139, that a rule of the State Banking Commission attempting to put into effect a policy on branch banking which was not written into the law by the legislature was invalid. The court specifically stated:

> "The acts of our legislature to be examined for such broad policy and standards to guide the Commission here applicable are as stated above, and there is nothing therein indicating that the legislature contemplated that the rules to be adopted by the Commission for 'the management and administration of banks' should extend beyond the area of bank operation as contrasted to bank location." 80 S.D. at 495, 127 N.W.2d at 141.

It is my opinion that until the legislature specifically authorizes movement of a bank's charter from one city to another with definite guidelines for such a move there is no implication that any such permission was contemplated by the legislature.

The Banking Commission has not been granted authority by the legislature to allow a bank chartered in one city to move to another and the decision of the circuit court refusing to allow that move should be affirmed.