THE STATE EX REL. JOHN T. BUCKLEY ET AL., Directors of Consolidated School District No. 10 of Pemiscot County, v. L. D. THOMPSON, State Auditor.—19 S. W. (2d) 714.

Court en Banc, July 5, 1929.

*Bowersock, Fizzell & Rhodes* for relators.

*Stratton Shartel,* Attorney-General, *Don Purteet,* Assistant Attorney-General, and *J. K. Roach,* for respondent.

ATWOOD, J.—This case comes to the writer on reassignment. It is an original proceeding in mandamus brought by relators, the directors of Hayti Consolidated School District No. 10 of Pemiscot County, Missouri, against respondent, the State Auditor, to compel him to register and certify certain building bonds issued by said consolidated school district. Respondent waived issuance of the alternative writ and filed answer and return alleging that said bonds were illegal and void for reasons therein stated at length. Relators thereupon filed reply and motion for peremptory writ of mandamus, admitting "all of the allegations of fact contained in said answer and return," and requesting the issuance of a peremptory writ of mandamus as prayed for in the petition "for the reason that the answer and return of the respondent herein shows no good and sufficient reason why said peremptory writ should not be awarded." We therefore look to the facts well pleaded in the petition and answer for the facts of the case.

From the allegations of relators' petition we gather that they are the duly elected, qualified and acting directors of Hayti Consolidated School District No. 10 of Pemiscot County, Missouri; that said district is a consolidated school district duly and legally organized and existing under the laws of the State of Missouri ap-

plicable to consolidated school districts; that on March 12, 1928, relators, constituting the board of education of said consolidated school district, met in regular session and adopted a resolution calling a special election in said district to be held on April 3, 1928, for the purpose of submitting to the qualified voters of said district a proposition to authorize the issuance of its bonds in the sum of $65,000 for the purpose of erecting a school house for high school purposes in said district and furnish the same, and a proposition to authorize the issuance of bonds for said district in the sum of $5,000 for the purpose of erecting a school house for negro children in said district and furnishing same; that notice of said election was duly given as provided by law by posting five copies of a notice thereof in five public places in said school district more than fifteen days prior to the date of said election; that said election was duly held in accordance with all of the provisions of the Constitution and laws of the State of Missouri applicable thereto; that at said election the board of education of said consolidated school district was authorized to issue its bonds for each of the purposes above named, the vote on the first proposition being 578 votes for the loan and 89 votes against the loan, and the vote on the second proposition being 590 votes for the loan and 71 votes against the loan; that on October 2, 1928, pursuant to authority conferred at said special election, relators, constituting the board of education of said consolidated school district, met in regular session and adopted a resolution providing for the issuance of a series of building bonds of said consolidated school district for the purposes aforesaid, said series aggregating the principal sum of $70,000 and consisting of seventy bonds numbered from one to seventy inclusive, each in the sum of $1,000, all of said bonds being dated August 1, 1928, becoming due serially without option for prior payment, bearing interest at rate of five per cent per annum, payable semi-annually on February 1st and August 1st of each year, the first interest coupon, however, becoming due on August 1, 1929, both principal and interest being payable at the office of the Commerce Trust Company in Kansas City, Missouri; that respondent L. D. Thompson is and has been for several years the duly elected, qualified and acting Auditor of the State of Missouri; that under and by virtue of the laws of the State of Missouri before the bonds of any school district shall obtain validity or be negotiated they shall be presented to the State Auditor who shall, if in the issuance thereof all of the conditions of the law have been complied with, register the same and certify by indorsement on each bond that all of the conditions of the laws have been complied with in the issuance of such bond, if such be the case, and that if the evidence of such facts has been filed and preserved by him; that relators duly presented to respondent the building bonds aforesaid, together with

a duly authenticated transcript of the proceedings leading up to and authorizing the issuance of said bonds, and relators tendered to respondent the usual and customary fees due him upon the registration of said bonds; and that although demand was made upon respondent to register and certify said bonds as aforesaid he has wholly neglected and refused and now continues to neglect and refuse to register and certify the same, and that by reason of said wrongful refusal relators are wholly unable to consummate the sale of said bonds and to deliver the same and obtain the funds with which to build the school buildings hereinbefore mentioned.

The facts pleaded by respondent in support of his refusal so to do appear in the following part of his answer and return:

"Respondent states that prior to April 5, 1927, there existed in the incorporated municipality of Hayti, Pemiscot County, Missouri, and the surrounding territory, comprising altogether approximately 10,080 acres of ground, a town school district having a board of directors or board of education consisting of six members, said town school district being the school district of Hayti, Missouri, commonly known as Hayti School District No. 16 of Pemiscot County, Missouri; that said town school district contained more than 500 children of school age according to the last enumeration, and that by reason of said fact said town school district was prohibited by the laws of the State of Missouri (and in particular by Section 11258, Revised Statutes of Missouri 1919, as amended, Laws of Missouri 1925, page 331) from joining in the organization of a consolidated school district and thereby obtaining the special state aid and other benefits accruing solely to consolidated school districts; that well knowing such fact and for the sole purpose of avoiding the provisions of the laws of the State, more than ten qualified voters residing in said Town School District of Hayti, Missouri, petitioned the board of directors of said town school district for a change in the boundary lines of said town school district in that certain territory described in said petition, containing approximately 6080 acres of ground and more than twenty children of school age, be detached from said town school district, and said voters further petitioned that said proposed change in boundary lines be submitted at the annual school meeting or election to be held in said town school district on April 5, 1927; that thereafter, notice of such proposed change in the boundary lines of said town school district was duly given as required by law, and at the annual election held in said school district on April 5, 1927, a majority of the voters in each part of said town school district voted in favor of such change in the boundaries of said town school district by detaching from said town school district said territory of approximately 6080 acres of ground; that the effect of such alleged change in the boundary lines of said

Hayti Town School District No. 16 was to divide said town school district by detaching therefrom approximately 6080 acres of ground and by leaving in said Town School District No. 16 approximately 4,000 acres of ground.

"Respondent states that immediately after the purported detachment of the territory aforesaid from Hayti Town School District No. 16, and in the month of April, 1927, said detached territory was purported to be organized by the voters thereof as a common-school district under the name School District No. 58 of Pemiscot County, Missouri.

"Respondent states that on April 30, 1927, there was filed with the County Superintendent of Pemiscot County, Missouri, a petition signed by more than twenty-five qualified voters residing in three alleged school districts, to-wit, said Hayti Town School District No. 16, and said Common School District No. 58 (said Common School District No. 58 being the district purported to be formed out of the territory theretofore purported to be detached from said Hayti Town School District No. 16, as hereinbefore stated), and a third common school district, being School District No. 14 of Pemiscot County, Missouri; that by said petition, said voters requested said county superintendent to visit the community and investigate its needs and make and post plats of a consolidated school district, and publish notices of a special school meeting to vote on the organization of a consolidated school district; that thereafter said county superintendent visited said community and investigated its needs and determined the exact boundaries of the proposed consolidated district, said boundaries including only the territory embraced in said three purported school districts, and that thereafter, to-wit, on May 31, 1927, the voters in said territory duly voted in favor of the organization of said consolidated school district, and said consolidated school district was named and designated Consolidated School District No. 10 of Pemiscot County, Missouri; that petitioners herein are the duly elected, qualified and acting directors of said alleged Consolidated School District No. 10 of Pemiscot County, Missouri.

"Respondent states that thereafter, to-wit, on June 15, 1927, the voters of School District No. 11 of Pemiscot County, Missouri, a common-school district, voted in favor of the annexation of said school district in its entirety to said alleged Consolidated School District No. 10 of Pemiscot County, Missouri, and on June 28, 1927, the voters of School District No. 49 of Pemiscot County, Missouri, a common-school district, voted in favor of the annexation of said school district in its entirety to said alleged Consolidated School District No. 10 of Pemiscot County, Missouri, and that the board of directors of said alleged Consolidated School District No. 10 of Pemiscot County, Missouri, thereafter accepted said school districts

and purported to make them a part of said Consolidated School District No. 10 of Pemiscot County, Missouri.

"Respondent states that at the time of the alleged change in the boundaries of said Town School District of Hayti, Missouri, being School District No. 16 of Pemiscot County, Missouri, there resided in said school district according to the last enumeration 683 pupils of school age; that 374 of said pupils resided in the territory purporting to be detached from said Hayti Town School District, and afterwards purporting to be organized into a common-school district as School District No. 58 of Pemiscot County, Missouri; and 309 of said pupils resided in the territory purporting to be left as the Town School District of Hayti, Missouri, being School District No. 16 of Pemiscot County, Missouri."

The specific grounds of respondent's refusal to register and certify said bonds are alleged in his answer and return to be "that said alleged Consolidated School District No. 10 of Pemiscot County, Missouri, does not constitute, either in law or in fact, a consolidated school district under the laws of the State of Missouri; that said alleged Consolidated School District has no power to issue the bonds tendered to respondent for registration and certification; that said bonds are illegal and void; that because of the invalidity of the organization of said alleged Consolidated School District No. 10 of Pemiscot County, Missouri, and the invalidity and illegality of the bonds purporting to be issued by said alleged Consolidated School District respondent has rightfully refused and continues to refuse to register and certify said bonds in accordance with the statutes of the State of Missouri."

The only points urged in respondent's brief are that the alleged change in the boundary lines of Hayti School District No. 16 was illegal, that it therefore at all times contained more than 500 children of school age and could not legally be included in said consolidated school district, and that its inclusion made the organization of said consolidated school district illegal and void. Obviously, these contentions all rest upon the ground first above pleaded, to-wit, "that said alleged Consolidated School District No. 10 of Pemiscot County, Missouri, does not constitute, either in law or in fact, a consolidated school district under the laws of the State of Missouri." Can they be considered in a proceeding of this kind?

An examination of the prescribed duties of the State Auditor discloses that he is not required to register bonds unless "in the issuance thereof all of the conditions of the law have been complied with;" nor is he required to certify by endorsement on each bond that "all the conditions of the laws have been complied with in its issuance" unless such be the case. [Secs. 1063, 1068, R. S. 1919.] It is true that Section 1063 also provides that

"such certificate shall be prima-facie evidence only of the facts therein stated, and shall not preclude nor prohibit any person from showing or proving the contrary in any suit or proceeding to test or determine the validity of such bond, or the power of the . . . school board . . . or other authority, to issue such bond; and the remedy by injunction shall also lie at the instance of any taxpayer of the respective . . . school district, . . . to prevent the registration of any bonds alleged to be illegally issued or funded under any of the provisions of this article." But, we think it is apparent from a reading of Sections 1063, 1068 and 1069, Revised Statutes 1919, that respondent is charged with the grave duty of determining in the first instance whether or not in the issuance of such bonds all of the conditions of the law have been complied with. Section 1068 provides that "the only defense which can be offered against the validity of such bonds shall be for forgery or fraud," and Section 1069 contains provisions to the effect that all bonds registered by the State Auditor, whereon there is no default in payment of principal or interest, may be accepted as good and lawful security for the investment of the capital stock, surplus and reserve funds of any insurance or fraternal benefit society incorporated in or authorized to transact business in this State, or trust company authorized to transact business in this State, or by the State Superintendent of Insurance as security or pledge in all cases where such pledge or security is required by the laws of this State, or by the State Treasurer as security for the deposit of any and all state funds, or by county and city treasurers as security for the deposit of any and all county and city funds, or for the investment of any funds in the possession of any administrator, executor, guardian, curator, trustee and all other persons sustaining fiduciary relations, and that such investments may be made without an order of court first had and obtained and without incurring liability for loss except in case of inexcusable negligence.

In view of the weighty consequences of such registration it must be a "condition" of the law in connection with the issuance of bonds that the corporation issuing them be a *de jure* or a *de facto* corporation and not a mere intruder, and if the State Auditor has not been furnished with evidence of proper corporate existence why may not such fact be put in issue in a proceeding of this kind? This is a proceeding against respondent as an elective officer of the State to compel him to perform certain duties which he is required to perform only when all the conditions of the law have been complied with in the issuance of the bonds tendered for registration. It is not intended to serve nor can it serve the purpose of an ouster suit. We agree that collateral attacks upon the corporate existence of municipal or public corpo-

rations in the *de facto* exercise of corporate life should not be tolerated (State ex rel. Consol. School Dist. v. Hunt, County Clerk, 199 S. W. 944; State ex rel. v. Birch, 186 Mo. 205, 219, and cases there cited), but in view of the solemn duty and responsibility thus imposed on the State Auditor we do not think that the allegation in his answer of lack of compliance with a condition of the law necessary to the alleged consolidated school district's legal corporate existence is a collateral attack. Such an allegation is directly responsive to relator's allegation that such district has a legal corporate existence, and it directly calls in question a fact which the State Auditor should find before registering the bonds. Furthermore, instead of putting in issue the facts pleaded in respondent's answer, relators admit them by their motion and reply. Having chosen the remedy of mandamus relators must show an unqualified right to the writ. [Ferris on Extraordinary Legal Remedies, sec. 194; State ex rel. v. Williams, 99 Mo. 291, 309.] In the case presented they must show that in the issuance of the bonds all conditions of the law have been complied with, including conditions necessary to the legal corporate existence of the alleged consolidated school district.

But, relators say, it is sufficient if they show a *de facto* corporate existence. We do not think so. Generally speaking, it would be an easy matter for the State Auditor to determine from documentary evidence presented whether or not the conditions of the law necessary to a *de jure* corporate existence have been complied with, but whether or not an organization is in the *de facto* exercise of corporate life would present a much more complicated question and one possibly not susceptible of documentary proof. We think the words "conditions of the law" appearing in Section 1063, Revised Statutes 1919, as applied to the question of corporate existence, mean the conditions necessary to bring about a *de jure* existence. No broader construction seems necessary or practical, for the law does not contemplate that the bonds shall be negotiated or have any validity until they are registered and certified as provided by statute by the State Auditor. At any rate, collateral grounds usually urged to sustain *de facto* corporations, such as estoppel, official recognition by the State, public acquiescence, and incidental legislative recognition, do not appear in this case, for relators have sold no bonds, obtained no funds and erected no buildings. In fact, relators specifically plead that they "are wholly unable to consummate the sale of said bonds and to deliver the same and to obtain the funds with which to build the school buildings hereinbefore mentioned."

Considering then only the *de jure* corporate existence of the alleged consolidated school district, we find that according to the facts plead-

ed the first move looking to the organization of the district was the attempt by change of boundary lines to detach enough territory from Hayti School District No. 16, which embraced the town of Hayti and some adjacent territory and contained more than 500 children of school age, so that neither the detached territory nor the territory remaining in Hayti School District No. 16 would contain as many as 500 children of school age. The particular statute thus sought to be avoided is Section 11258, Revised Statutes 1919, as amended, Laws of Missouri, 1925, page 331, providing that no consolidated school district "formed under the provisions of this act shall include within its territory any town or city district that at the time of the formation of said consolidated district has by the last enumeration five hundred children of school age."

Respondent says that this proceeding was without authority and void. If there is any legal authority therefor it must be found in Sections 11201 and 11253, Revised Statutes 1919. Section 11201, applying only to common schools, provides what shall be done "when it is deemed necessary to form a new district to be composed of two or more entire districts, or parts of two or more districts, to divide one district to form two new districts from the territory therein, to divide one district and attach the territory thereof to adjoining districts, or to change the boundary lines of two or more districts." Section 11253 reads: "All the provisions of Section 11201, relating to the changes of boundary lines of common school districts, . . . shall apply to town, city and consolidated districts." In State ex inf. v. Sweaney, 270 Mo. 685, 691, this court in banc held that Section 10881, Revised Statutes 1909, now 11253, supra, only made applicable to town, city and school districts the provision of Section 10837, Revised Statutes 1909, now 11201, supra, relating to changing "the boundary lines of two or more districts," and provided no way of dividing a town, city or consolidated district into two or more districts. By the same course of reasoning, even if it be said that in the instant case there was a change of the boundaries of *the one* district rather than a division of it into two districts, it follows that the provision sought to be made applicable by this reference statute is here unavailing because such provision relates only to change of boundary lines of *two or more* districts. In the case of State ex rel. v. Thurman, 274 S. W. 800, Division One of this court held that under the above statutes the boundary lines between a consolidated school district and another school district could be changed so as to take certain territory from the consolidated school district and add it to the other district. We think the facts in the instant case bring it within the reasoning of the Sweaney case, supra, and this case is ruled thereby. It follows that the attempt to change the boundary

lines of Hayti School District No. 16 by detaching territory therefrom was illegal, and inasmuch as consolidated school districts can be legally formed only by including the requisite number and kind of school districts and in the manner provided by statute (Sec. 11255, R. S. 1919), we conclude that Hayti Consolidated School District No. 10 is not a *de jure* corporation.

For the reasons above stated it is ordered that our alternative writ be quashed. *Frank, Ragland, Walker* and *Gantt, JJ.*, concur; *White, C. J.*, dissents in separate opinion, in which *Blair, J.*, concurs.

WHITE, C. J. (dissenting) :—I am unable to agree in the leading opinion in this case.

The Board of Directors of Consolidated School District No. 10 determined to issue bonds and submitted the proposition to the voters of the said district, who voted the bonds by an affirmative vote of 590 to 71. No question is raised as to the regularity of that proceeding.

The bonds are claimed to be invalid, because of alleged illegality by which Consolidated School District No. 10 was organized. According to the above statement, it was a *de facto* functioning school district, such a one as if properly and legally organized could discharge the functions incident to a *de jure* school district. Since all the acts relating to the issuance of these bonds were conducted and carried through by a *de facto* school district, they cannot be invalidated by a collateral attack such as this. [State ex rel. Waddell v. Johnson, 316 Mo. 23, and cases cited; Perkins v. Fielding, 119 Mo. l. c. 158, 159; In re Oak Street v. McTernan, 308 Mo. l. c. 508; 43 C. J. 140; State ex rel. v. Jones, 8 S. W. (2d) l. c. 69; State v. Rich, 20 Mo. 393.]

It is claimed by the respondent, and the opinion adopts the view, that the organization of Consolidated School District No. 10 was not merely irregular, but was absolutely void, and therefore had not a *de facto* existence. It is true that a mere usurper of an office is not a *de facto* officer, and mere assumption of the existence of a school district by purported directors of such district would not be a *de facto* corporation, nor the said directors *de facto* officers. The distinction is this: If the district is exercising functions, which under the law it might exercise if properly organized, then it is a *de facto* municipal corporation, and its acts cannot be questioned in a collateral proceeding. But, if such a district as this purports to be could not exist under the law, then, of course, its acts may be attacked collaterally. It is a school district composed of five separate districts. Undoubtedly such a consolidated school district as this, composed of the separate districts by which it was formed, could exist

and perform the functions of such district. I believe that is not disputed.

II. The point of attack is upon two steps in the proceedings by which this district was formed. Originally the town of Hayti, Pemiscot County, and surrounding territory composed a town school district, called Hayti School District No. 16, containing 10,080 acres, and by the last enumeration had 683 pupils of school age. The voters of that district, in March and April, 1927, attempted to separate that district into two districts, leaving the town district with 4,000 acres and detaching the country district of 6080 acres. That left 309 pupils in the town district, and 374 in the country district of school age. The proceeding was irregular. In dividing the district, it proceeded under the pretext of changing the boundary lines of the district, which it had no right to do. Subsequently, in the very next month, Consolidated School District No. 10 was formed by re-attaching the detached territory and including another country-school district, No. 14. It is said that this is illegal, because, and only because, the original detachment of a part of the town district of Hayti was illegal. Section 11258, Revised Statutes 1919, as amended in 1925, provides that no consolidated districts shall be formed under the provisions of this article, unless it contains an area of at least fifty square miles and it shall not include a town district which has an enumeration of 500 children of school age. If the detachment of territory to form School District No. 58 was null and void, then Hayti had more than 500 pupils of school age, so the validity of the consolidation it is claimed depends entirely upon the validity of the division of the original town school district. District No. 14 could have been attached to No. 16, under Section 11252, Revised Statutes 1919. Later in the same year two other districts, Nos. 11 and 49, were annexed to Consolidated District No. 10 under that section.

In the case of State ex inf. Attorney-General v. School District, 314 Mo. 315, territory was attached to a town district under the pretense of changing boundary lines, the same proceeding as here. It was held to be illegal, but yet, on account of laches of the relators who attacked the validity of the organization, they were denied relief. It was *quo warranto* and a direct attack. No doubt under the facts of that case, if there had been a collateral attack upon that organization, the action would not have been entertained.

The effect of the action in this case was to annex District No. 14 by a roundabout and illegal method. It might have been annexed

regularly and lawfully by proceeding under Section 11252. Thus, Consolidated District No. 10 is functioning, discharging the duties it might have discharged as District of Hayti No. 16, including District No. 14, if No. 14 had been annexed legally. Therefore Consolidated District No. 10 is a *de facto* corporation. A mere change of name and absorbing unwarranted territory does not destroy the effect of its acts. It cannot be said that no school district exists in that territory, nor that *no* directors can officiate there.

In the case of Randolph v. Moberly Hunting & Fishing Club, 321 Mo. 995, 15 S. W. (2d) 840, Point IV, the court *en banc* held, all of the judges concurring, that, where a county was exercising jurisdiction over certain territory and that fact was shown by the plaintiff in making out his case, he could not then attack collaterally that jurisdiction by showing that there was no law by which jurisdiction could be acquired. In fact, there was a statute which prevented the acquisition of territory by a county in any manner except the manner prescribed by that statute.

It is argued that, on account of the irregularity, the Hayti Town School District had more than 500 pupils, and therefore could not become a part of the consolidated school district by attaching other territory under Section 11258. After the attempted division, the town district had less than 500 pupils. It could only be shown that it had more than that by counting those in the detached territory. It then became a question of fact whether there were 500, more or less, and that fact could not be inquired into except by a direct proceeding.

In State v. Rich, 20 Mo. 393, a criminal case, the validity of the organization of Stone County was brought in question, and it was claimed that under the statute the organization of the territory of Stone County by detaching it from Taney County would leave in the latter county less population than the existing ratio of representation required. Taney County could not be dismembered legally in that way. It was claimed that the proceeding was utterly void. It was held that the fact of population could not be questioned in that collateral proceeding. That case has been cited in several recent cases. [Bayha v. Fidelity & Casualty Co., 217 S. W. 1. c. 273, 274; Lumber Co. v. Lead Co., 222 S. W. 1. c. 400.]

III. The bonds were legally voted. Consolidated School District No. 10 was composed of five original districts, Nos. 16, 58, 14, 11 and 49. If No. 58 was not legally detached from No. 16, No. 10 was composed of four. It is not disputed that Nos. 11 and 49 were legally and properly annexed under Section 11252. The fact that the Town School District of Hayti chose to go under another name, Consolidated School Dis-

trict No. 10, and the annexation of Nos. 11 and 49 occurred as if it bore that name, did not affect the validity of that annexation. They were disorganized and were merged with No. 10 (or 16). Thus No. 10 was regularly and legally composed of original Nos. 16, 11 and 49, all the territory it claims except that comprising 14. Only that territory does not properly belong to the district, respondent claims.

The vote on the bond issue in the entire territory was 590 for and 71 against. If all those negative votes were cast by voters in the territory other than No. 14, it could not have defeated the bonds, unless more votes were cast for it in No. 14 than in all the rest of the territory, a patent impossibility.

Respondent does not claim, nor does the leading opinion, that no legal votes were cast, or that there was no school district *at all* in which an election could be held, or that no school directors had been elected nor could be elected there; that the territory where they had maintained schools and paid taxes for that purpose for two years was merely unorganized territory, incapable of doing those things. But that is the only theory upon which the vote on these bonds could be declared null and void in any action.

The claim of respondent is that Town School District of Hayti still exists, including No. 58. He does not deny that Nos. 11 and 49 were legally annexed to it. He only claims that District No. 14 was not legally annexed. Then it is a *de jure* corporation, unless the assumption of another name puts it out of existence. The same territory and the same people are there, the same need of schools, and the schools are there and taxes paid to maintain them. The district performs as if it existed.

To say that, because *one* country district, No. 14, out of all the territory, was illegally annexed, it caused complete dissolution of all school organization in that territory, is an absurdity, which respondent has not ventured to maintain. How can it be said that the directors, who submitted the proposition to a vote, were not, at least, *de facto,* officers, or that the voters did not vote legally upon it?

If respondent's contentions should be allowed, we would be confronted with these results:

Taxes were levied and collected without authority in all of District No. 10; there was no board of education there, for the district did not exist and the alleged directors or board were mere usurpers, assuming charge of property with which they had no right to meddle and causing the disbursement of money over which they had no legal control; teachers entered void contracts with this non-existent board, and, if they have not received their pay, may sue in *quantum meruit* a phantom entity which vanishes as you look at it; the usurping treasurer of said non-existent board has disbursed

sums of money which he had no right to handle at all; the seeds of many lawsuits are planted and general chaos reigns in a large community, where the people thought they were protected in their acts by the law.

For these reasons I dissent. *Blair, J.,* concurs.