250 S.W.2d 830 (1952)
DUBINSKY
v.
LINDBURG CADILLAC CO.
No. 28450.
St. Louis Court of Appeals, Missouri.
June 17, 1952.
Rehearing Denied September 5, 1952.
*831 Norman Begeman, St. Louis, and Lowenhaupt, Waite, Chasnoff & Stolar, St. Louis, of counsel, for appellant.
Jerome F. Duggan, St Louis, and Dubinsky & Duggan, St Louis, of counsel, for respondent.
HOLMAN, Special Judge.
This is an action at law to recover damages claimed by plaintiff (respondent) as a result of his purchase from defendant (appellant) of a defective Cadillac automobile. The case was tried to the court, a jury being waived. Plaintiff recovered a judgment for damages in the sum of $1,848.22, together with accrued interest. Defendant has duly perfected its appeal.
Plaintiff testified that in January, 1949, he purchased a new Cadillac from defendant and paid therefor $4,274.23. In July of that year he discovered that water was getting into the oil in the crank case and was advised by defendant that it would be necessary to put in a new main gasket, which would require leaving the car in the garage for three or four days. The plaintiff needed an automobile at once for a required business trip and at the suggestion of defendant's sales manager traded his car for a new Fleetwood Cadillac, paying an additional sum of $1,448.82. Within a week he began having trouble with the new car. His principal complaint was that in going up hills or in attempting to accelerate the motor sufficiently to pass other automobiles the motor would cut out suddenly and throw the passengers forward in their seats; that the motor would miss and as far as speed was concerned it had no power at all; that he took the car to defendant's garage early in August and complained of the defective operation of same and the defendant's employees tried to correct the defects but failed so to do. It appears that plaintiff took the car to defendant on an average of at least once a month from that time until this suit was filed in April of 1950, and on each occasion he would report that he was still having the same trouble and they would try to correct the same, but failed in their efforts. In one instance toward the last of September, 1949, the plaintiff made a vigorous complaint to defendant's sales manager, Lee Kline, who stated to him, "Now be patient, we will get this thing corrected for you or we will give you a brand new automobile of like kind." On this occasion, in the presence of Mr. Kline, one of defendant's mechanics stated, "We have a number of cars with the same complaint. We are doing the best we can."
On two occasions Mr. Kline had plaintiff bring the automobile to the garage to be checked by factory representatives, but plaintiff testified they were not able to correct the defects. It appears that each time defendant's employees worked on the car they told plaintiff to go ahead and drive the car and use it in order to make a test as to the work they were doing. Plaintiff testified *832 that in the operation of this motor vehicle he followed the instructions in the book furnished him by defendant and also the instructions given him by defendant's agents and employees. The defendant failed to furnish plaintiff with a new automobile in accordance with the conversation plaintiff had with defendant's sales manager in September, 1949. Apparently after the suit was filed there was some effort to settle the controversy, but when these efforts failed, plaintiff, on May 12, 1950, sold the automobile for $2,800. The defendant's sales manager had previously placed a valuation upon it of $2,750.
Defendant presented the testimony of Mr. Kruse, its service manager. He stated that he first knew of plaintiff's complaint in December of 1949; that on December 16 he and a supervisor for the Cadillac Company tested the car and found that it would not attain high speed and that upon examination of the engine this condition was found to result from carbon that had accumulated around the valves, causing them to stick; that there was nothing unusual or serious about this condition and after the valves were ground and valve lifters corrected they made a test and found that the automobile operated normally at 90 miles an hour.
The testimony of Walter Plough was also offered by defendant. This witness related that he purchased the automobile from the plaintiff and immediately drove it to the airport, going from 75 to 100 miles an hour and that it performed all right. It was sold by him very shortly thereafter to a purchaser from Tulsa, Oklahoma, under a guarantee that it would prove satisfactory and the witness had never received any complaint from him.
The plaintiff in his petition had sought recovery for the entire amount he had paid the defendant in the purchase of both Cadillacs. At the time of entering the judgment the court filed a written opinion in which the principal fact issues were determined in favor of the plaintiff. The court refused to allow any damages as a result of the defect in the first car, and computed the damages by deducting the resale price of the second automobile from the purchase price thereof, which resulted in an item of damage in the sum of $1,848.22, for which amount, together with interest, judgment was rendered.
Although this is a law action, since it was tried before the court, it is our duty to review the whole case and reach our own conclusions upon the law and the evidence as in suits of an equitable nature. Section 510.310, subd. 4 RSMo 1949, V.A.M.S. Toler v. Atlanta Life Ins. Co., Mo.App., 248 S.W.2d 53. However, we are admonished by this statute to give due regard to the opportunity of the trial court to judge of the credibility of the witnesses and not to set aside the judgment unless it is clearly erroneous.
In the sale of an automobile there is an implied warranty that it is reasonably fit for the use intended. Harvey v. Buick Motor Co., Mo.App., 177 S.W. 774. In the event of breach the purchaser has two remedies, (1) he may keep the vehicle and recover from the seller the difference in value between the chattel as warranted and its actual value in view of its defective condition, or (2) he may, within a reasonable time, return the car to the seller and recover the full purchase price. If the purchaser is persuaded by the seller to keep the automobile for a while to give it proper trial or to permit the seller to correct the defect and it is not made to come up to the warranty he may still return the same and recover the purchase price. Laumeier v. Dolph, 145 Mo. App. 78, 130 S.W. 360.
There is evidence in this record that tends to justify a recovery upon either breach of implied warranty or breach of defendant's agreement to replace the automobile. The opinion of the learned trial judge does not state precisely upon which theory recovery was based. We construe same, however, as permitting recovery upon a breach of implied warranty with the subsequent agreement to replace being relied upon to excuse plaintiff for having kept the car almost 10 months before tendering same to defendant.
Ordinarily in this situation a purchaser is not permitted to resell the vehicle and necessarily recover the difference between *833 the original cost and the amount received upon resale. In this case, however, defendant cannot complain of plaintiff's action in this respect, as it agreed with him before the sale that the automobile was worth $2,750 and plaintiff sold it for $2,800.
Defendant contends that the judgment cannot stand because there was no proof of the purchase price of the second Cadillac defendant sold plaintiff. We have searched the record and do not find any evidence of this amount. However, this was not a strongly controverted issue and was an item easily susceptible of proof by either party. It is evident from the record that the purchase price was $4,648.82 and this amount was referred to by the attorneys and the court. The trial court, in fact, specifically found that the sale price was $4,648.82, of which plaintiff paid $1,448.82 in cash and obtained an allowance of $3,200 for the first Cadillac. These figures evidently appeared upon one of defendant's exhibits which was identified but not formally offered in evidence and therefore is not included in the transcript.
After the evidence was completed and before the final submission of the case there occurred a colloquy between counsel and the court concerning the computation of damages, in which, among other things, plaintiff's attorney expressed the view that plaintiff should recover $2,387.41 and the court stated that the amount should be $1,848, to which defendant's attorney agreed. We do not desire to extend this opinion by copying this discussion herein. It will suffice to say that we construe same to be equivalent to an admission by defendant as to the amount of the purchase price and a further admission that if plaintiff was permitted recovery the damages should be $1,848, with the possible exception that the court should deduct something for the value of plaintiff's use of the automobile. The defendant is bound by these admissions of its attorney and same are an adequate substitute for evidence as to the purchase price of the automobile. Cantrell v. Knight, Mo.App., 72 S.W.2d 196.
There is some indication in the record of defendant's assertion that the judgment should have been reduced by the value to plaintiff of the use of this automobile for 10 months, during which it was driven 15,000 miles. The use of this vehicle was probably of some value to plaintiff. The amount, however, particularly in view of the unsatisfactory operating condition of the car, was a matter requiring proof. None appears in the evidence. If defendant desired to have plaintiff charged with the value of the use of said automobile and the judgment reduced accordingly the burden was upon it to produce evidence upon this issue. Not having done so it cannot complain of the judgment in this respect.
It is urged by the defendant that the alleged agreement wherein defendant's sales manager Kline stated that the car would be replaced if the defects were not corrected is invalid because there is no evidence of his authority to so contract. The cases cited by defendant properly state the rule that mere authority to sell does not authorize an agent to thereafter modify or rescind the sales contract. Moorman Manufacturing Co. v. Selsor, Mo.App., 226 S.W. 89. In asserting this rule defendant evidently overlooks the fact that Mr. Kline was not an ordinary salesman. The uncontradicted evidence is that he was defendant's sales manager. It is our view that since Kline was the sales manager and therefore in charge of an important division of defendant's business this fact alone is sufficient to support an implication of authority to modify the sales contract. 2 C.J.S. Agency § 114, page 1325.
The defendant complains that the trial court refused to make findings on controverted issues of fact and contends this is ground for reversal. Before final submission of the case the defendant made a general request, "That the court prepare and file a brief opinion containing a statement of the grounds for the court's decision and the method of determining any damages that may be awarded plaintiff." This was a proper request and clearly followed the provisions of Section 510.310 subd. 2, RSMo 1949, V.A.M.S. The court at the time of entering judgment filed an opinion which included its findings upon all principal fact *834 issues raised by the pleadings and supported by evidence. This opinion fully complied with the aforesaid request of defendant's counsel and with the mandate of the statutory provision. The defendant, however, in addition to the aforementioned general request, filed a written instrument asking that findings be made on eight specific questions of fact and ten additional declarations of fact. The court apparently construed this is a request for findings and declarations favorable to defendant. The opinion therefore recited that since the court had found for plaintiff, "The findings of controverted fact tendered in writing by defendant are denied." This forms the basis of defendant's complaint.
We have been unable to find any case in this state which discusses the requirements of an opinion of the trial court in order that it comply with the code provision. It is our view that the court is not required to specifically answer every interrogatory submitted by a litigant. The court may determine its relevancy and whether the request involves a principal fact issue and may then prepare the opinion in such form and language as may best express its views and findings. The legislature clearly contemplated that findings would not be made upon every fact issue, as it included in the statute a provision that, "All fact issues upon which no specific findings are made shall be deemed found in accordance with the result reached." As we have already indicated, the opinion herein sufficiently complied with the request of the defendant.
Even if the court had failed to make all of the required findings it is doubtful under the evidence and circumstances of this case that the error would be considered reversible, as we are required by the statute to review the evidence upon appeal and form our own conclusions therefrom. As stated by this court, in Pudiwitr v. Soloman, Mo.App., 224 S.W.2d 562, 567, "A special finding under the new code serves no particular purpose except that in a situation where the evidence is conflicting and close, the appellate court may be expected to defer to it because of that court's regard for the superior opportunity of the trial court to judge the credibility of the witnesses."
We have carefully read the transcript and considered all of the evidence therein. We are in accord with the findings and judgment of the trial court and it therefore follows that the judgment should be affirmed. It is so ordered.
BENNICK, P. J., and ANDERSON, J., concur.