STATE of Missouri, at the relation of James K. HAND, Arthur P. Beauchamp, and George L. Thompson, of Maries County, Missouri, and Homer Campbell, Clyde Bull, Clarence Martin, Gene Smoot, Eugene Elkins, and Millard Hauck, members of the board of directors, Dixon Reorganized Schools R–I, Pulaski County, Missouri, Relators-Appellants,

v.

Jesse BILYEU, Reba Deardueff and Von Connor, last members of West Fairview School District No. 52, Maries County, Missouri, Von Connor, Dessie Bilyeu, and Frank Hodge, of Maries County, Missouri, and Willard Terry, Howard Henderson, Max John, Tim Ramsey, Ed Minzes, and James Murphy, board of directors of Reorganized School District R–I, Maries County, Missouri, Respondents.

No. 7918.

Springfield Court of Appeals.

Missouri.

April 4, 1961.

Edgar M. Eagan, Jefferson City, for relators-appellants.

Bond & Dominique, John O. Bond, P. Pierre Dominique, Jefferson City, for respondents.

RUARK, Judge.

In this mandamus proceeding the relators have appealed from the action of the circuit court in quashing the alternative writ.

Some of the relators are taxpaying citizen patrons of West Fairview, a (former) common school district, and the others are the members of the school board of Dixon Reorganized School R-1 of Pulaski County. The respondents are Von Connor, chairman, and Dessie Bilyeu, secretary of a West Fairview meeting at which there was submitted the question of whether the district should be annexed to Reorganized School R-1 of Maries County, also the members of the last school board of West Fairview, the County Superintendent of Schools of Maries County, and the members of the school board of the Maries district. For sake of brevity we will hereafter refer to the common school district as Fairview, the annexing district whose board members are respondents as Maries, and the contending district whose board members are relators as Dixon.

On December 19, 1958, a petition was presented to the Fairview school board calling for a special election to determine whether Fairview should be annexed to Maries. By letter of date March 13, 1959, the State Department of Education notified the Pulaski County Board of Education that in respect to a disagreement between the county boards of Maries and Pulaski counties, which disagreement had been referred to the state board, it had placed all of Fairview district in the Dixon (Pulaski County) reorganization plan, subject to submission to the voters within sixty days. Copy of that letter went to the Maries board. On March 16, 1959, the Fairview board called an election to determine whether Fairview should be annexed to Maries. On March 24 the Pulaski County board met and called an election for the Dixon plan, such election to be held on April 21.

On March 31, 1959, the voters of Fairview met pursuant to notice to vote on the issue of annexation to Maries. Von Connor was elected chairman and Dessie Bilyeu secretary. The votes were duly cast and counted and tally was kept on the blackboard. The total vote so counted was "against annexation, 21," and "for annexation, 20." *There is no dispute about that.*

Now Section 165.300 provides that the voting at elections such as this shall be as provided in Section 165.267, and the latter provides "each person desiring to vote shall advance to the front of the chairman and deposit his ballot in a box to be used for that purpose. When all present shall have voted, the chairman shall appoint two tellers, who shall call each ballot aloud and the secretary shall keep a tally and report to the chairman, *who shall announce the result; * * *"* Connor did not announce the result. Instead, four alleged absentee ballots having appeared from somewhere, he stated, "That is the way it stands, until this is continued and the absentee is counted in, and then we will have the final results of this election." The minutes substantially reflect this method of procedure.

On April 2, 1959, the respondent members of the school board met with the respondent Bilyeu, she then in capacity of clerk of the district, and "four disinterested counters." They opened the four alleged absentee ballots, declared them all as "legal according to law," and counted them all in "favor" of annexation, and respondent Dessie Bilyeu showed in her minutes, "This being total of count of election. For annexation—24. Against—21."

Section 165.300 provides, "Should a majority of the votes cast favor such annexation, the secretary shall certify the fact, with a copy of the record, to the board of said district and to the board of said city, town or village * * * district * * *" Dessie Bilyeu didn't do it quite that way. Instead, on the next day (April 3) she called the superintendent of the Maries school and verbally informed him *"with the absentee count, we had won this election"* and requested a meeting with the Maries board. Then this diligent lady typed a notice or request to Maries as follows, "As a result of the election of March 31, 1959, we, the school board of West Fairview No. 52, Maries County ask that the West Fairview School District be accepted by R-1, Maries County, Missouri." This was signed by the members of the board of Fairview (one of whom was Von Connor) and of course by Dessie, this time as clerk.

On that 3rd day of April there were apparently two meetings with the board of Maries. Dessie told the Maries board "the results of this election and I told them that we were ready to turn * * * all the records in the district complete to R-1, Maries." In one of those meetings she and the Fairview board turned over to the Maries board all of the records of the Fairview district. However, she thoughtfully retained in her personal possession those records which dealt with "this election part of it."

The minutes of the Maries board (April 3, 1959) show that "Dessie Bilyeu, clerk, reported to the R-1 board the results of the

annexation election held in West Fairview on March 31. There were 20 votes for annexation to Maries County and 21 against with 4 absentee votes. The 4 votes were in favor of annexation, making a total of 24 for and 21 against." On motion the Fairview district was accepted by Maries. These minutes also show the order for payment of some obligations of the Fairview district. Thereafter and thenceforth Maries district assumed to exercise jurisdiction over the deceased Fairview territory.

On or about April 6 the president of the Pulaski County board notified the president of the Maries board by letter that since the assumption of jurisdiction of Maries was based on absentee ballots, Pulaski County intended to go ahead with the proposed state plan and would not recognize the alleged annexation to Maries. On April 21 the Dixon reorganization election (which took in Fairview) was held and the great preponderance of the vote was in favor thereof. The district was thereafter organized, and since such time Dixon has also assumed to exercise jurisdiction over the Fairview territory.

■■ What we consider to be a preliminary question of law in this case is whether or not the chairman of the meeting (the Fairview election), or anyone else, for that matter, had any right to consider the so-called absentee ballots; for *if* absentee ballots can be cast at a common school district election, Connor could not have announced the election results until they also were counted, and relators' whole case would fall flat on its face at the very beginning. We recognize the rule that the office of mandamus is to execute, not to adjudicate.[1] Nevertheless, in every mandamus case there are involved a duty and a right, and the coercion of the writ is dependent upon the existence of a duty which the courts must find to exist as a matter of law. Sometimes the question is so interwoven as to require extended discussion.[2]

■ The casting of vote by absentee ballot at any election is not a matter of inherent right. It is a special privilege conferred and available only under certain conditions. Straughan v. Meyers, 268 Mo. 580, 187 S.W. 1159, 1164.

Section 112.010 provides that "any person * * * who expects to be absent from the county * * * on the day of holding any special general or primary election at which any presidential preference is indicated or any candidates are chosen or elected, for any congressional, state, district, county, town, city, village, precinct or judicial offices or *at which questions of public policy are submitted* * * * may vote at such election as herein provided."

It will be noted that in the enumeration therein set forth the words "school districts" are conspicuous by their absence. *Expressio unius est exclusio alterius.* The question is whether the "questions of public policy" apply only to the character of elections covered by the preceding enumeration or whether the legislative intent can be construed to reach out and gather in school elections on public policy, although quite obviously it would not extend to elections solely for school officers. In this connection we think the rule of *ejusdem generis,* or something analogous thereto, is applicable, and that the elections in regard to public policy should be restricted to the class of elections contained within the specific enumeration.[3]

1. State ex rel. School Dist. No. 24 of St. Louis County v. Neaf, 344 Mo. 905, 130 S.W.2d 509; State ex rel. Standefer v. England, Mo.App., 328 S.W.2d 732, note 15; State ex rel. Dunbar v. Hohmann, Mo.App., 248 S.W.2d 49.

2. Witness State ex rel. Kemper v. Carter, 257 Mo. 52, 165 S.W.2d 773(6); State ex rel. Wells v. Mayfield, 365 Mo. 238, 281 S.W.2d 9; State ex rel. Fielder v. Kirkwood, 345 Mo. 1089, 138 S.W.2d 1009; State ex rel. Jones v. Cook, 174 Mo. 100, 73 S.W. 489.

3. State v. Getty, Mo., 273 S.W.2d 170; State ex inf. McKittrick v. Wilson, 350 Mo. 486, 166 S.W.2d 499, 143 A.L.R. 1465; Puritan Pharmaceutical Co. v. Pennsylvania R. Co., 230 Mo.App. 848, 77 S.W.2d 508.

■ Section 4792, RSMo 1889, Section 111.010, RSMo 1949 (now Section 111.625, RSMo 1959, V.A.M.S.), provided for the exclusion of school districts from the more formal requirements in regard to conduct of elections in general, including the polls, ballots, poll books, booths, method of voting, et cetera. Obviously the legislature did not contemplate or intend that school elections belong in the same category as elections in general. The act of 1913 (Laws of 1913, p. 324) provided for absentee ballots to be voted at a general election, and then for only county, district, and state officers and for Members of Congress and presidental electors. The act of 1917 (Laws of 1917, p. 274) added primary elections but left the list of candidates who could be voted for intact. The law of 1933 (Laws of 1933, p. 219) added "special" to go with general and primary elections and identified the election as being one at which certain candidates were chosen, the list being increased by adding town, city, village, and judicial officers. Then followed the words in reference to questions of public policy, and this is the act substantially in its present form. The provisions of Chapter 112 following Section 112.010 implement and provide for the voting of absentee ballots in the elections specifically listed but do not make any provision or set up any mechanics for the voting of such in common school district elections, and some of the mechanics are inconsistent with the method of voting at common school district elections. For instance, Section 112.030 provides for the printing and supplying of absentee ballots at least thirty days prior to the election at which such ballots may be cast. Elections in school districts might be held on fifteen days' notice (Section 165.300, Section 165.-200, and Section 165.227). Under the provisions of Chapter 112 the absentee ballots are held for a definite length of time and are opened and counted after the election. In the school election under Section 165.300, it is contemplated that the ballots shall be counted and the result announced immediately. Section 112.020 provides that application shall be made to the officer charged with furnishing them *for the voting precinct*. Other sections provide for the posting of lists in a conspicuous place at the entrance of the office of the officer who furnishes the ballot. It can hardly be assumed that it is the duty of the county clerk to furnish ballots in a common school district election. If it be assumed that this duty falls on the district clerk, what office would he, or she, use for this purpose? Statutes relating to the same subject matter should be considered together [4] and construed if possible so that as to harmonize and be consistent with each other in reference to the subject involved,[5] and so as not to reach an unreasonable or absurd result.[6]

It is our conclusion that absentee ballots have no place in a common school district election.

The commands of the alternative writ break into two parts, one to Connor to announce the result of the special election of March 31, 1959, and to the members of the board of Fairview and its clerk, Bilyeu, to include in the minutes such announced result. These commands directly concern only Fairview district. Another command is to all the respondents, including the members of the board of Maries, to deliver over to the board of Dixon all of the books, records, money, et cetera, of the (former) Fairview district. This concerns not only Fairview but the Maries and Dixon districts as well.

■ We concern ourselves first with the chairman, Connor. Section 165.267 makes a positive direction that the chairman of the

4. In re Allen's Estate, 307 Mo. 674, 271 S.W. 755; State ex rel. Smithco Transport Co. v. Public Service Commission, Mo., 316 S.W.2d 6.

5. State ex rel. Cairo Bridge Commission v. Mitchell, 352 Mo. 1136, 181 S.W.2d 496; In re McArthur's Estate, 240 Mo. App. 435, 207 S.W.2d 546.

6. State v. Bern, Mo.App., 322 S.W.2d 175; State ex rel. Lefholz v. McCracken, 231 Mo.App. 870, 95 S.W.2d 1239.

meeting shall announce the result. Starting with the premise that absentee ballots have no place in a common school district election, we conclude that when all present had voted, and the votes had been counted and found to be 21 to 20 against annexation, that election was over and done with and there remained nothing to be done except to announce the result. The fact that there were in existence four so-called absentee ballots made no more difference and had no more legal effect than if they had been four last year's birds' nests. They simply had no existence in so far as this election was concerned and should have been ignored. With them out of consideration, there remains no excuse for Connor not to do what the law directed him to do, announce the result of the election.

We readily agree that mandamus will not lie to compel the doing of an act which, instead of being ministerial, is dependent upon the discretion or the judicial determination of the officer,[7] and that election officials are, in general, charged with the duty of determining the qualifications of voters, interpreting ballots, and deciding various other matters in connection with the holding of an election. These usually involve the determination of facts or a combination of facts and law. Hence the functions are said to be quasi-judicial, and not ministerial, and this discretion cannot be coerced by the courts.[8] Nor can mandamus take the place of an election contest.[9]

But where an official is positively directed to do a certain thing conditional upon the existence of certain facts, and those facts unquestionably exist without possibility of dispute, so that the duty is clear, then mandamus is proper.[10] For, as suggested in State ex rel. Lovell v. Tinsley, Mo.App., 236 S.W.2d 24, 28, "It does not mean that there is no right to the writ unless the facts are conceded and undisputed. If that were true, repondents in mandamus could prevail in every case by the simple expedient of filing a general denial and contesting the facts set up in the petition and alternative writ."

" * * * an act is none the less ministerial because the person performing it may have to satisfy himself that the state of facts exists under which it is his right or duty to perform the act." 50 C.J.S. Judicial, p. 566; State ex rel. Jones v. Cook, 174 Mo. 100, 73 S.W. 489. And this is true in respect to those charged with returning, certifying, entering or otherwise fixing the election results. (See cases under footnote 11.)

State ex rel. Richardson v. Baldry, 331 Mo. 1006, 56 S.W.2d 67, is not to the contrary. There it was said, loc. cit. 70, "In the determination of that question [the qualifications of certain persons to vote on road commissioner], respondents may have been and we think from the record herein doubtless were required to inquire into and pass upon *questions of fact as well as of law*." (Our emphasis) Hence it was held that the acts in question were quasi-judicial.

---

7. 55 C.J.S. Mandamus § 63b, p. 102; 27 C.J.S. Discretion, p. 290, et seq.; State ex rel. Schulz v. Fogerty, Mo.App., 195 S.W.2d 908, 911; State ex rel. Folkers v. Welsch, 235 Mo.App. 15, 124 S.W.2d 636; Corley v. Montgomery, 226 Mo.App. 795, 46 S.W.2d 283.

8. 50 C.J.S. Judicial, p. 562; State ex rel. Wahl v. Speer, 284 Mo. 45, 223 S.W. 655, 659; State ex rel. Richardson v. Baldry, 331 Mo. 1006, 56 S.W.2d 67; Wann v. Reorganized School Dist. No. 67, St. Francois County, Mo., 293 S.W.2d 408, 410.

9. State ex rel. and to Use of Averill v. Baird, 217 Mo.App. 362, 278 S.W. 416; 55 C.J.S. Mandamus § 142i(1), p. 241; and cases post.

10. 55 C.J.S. Mandamus § 132b, p. 219; State ex rel. Folkers v. Welsch, 235 Mo. App. 15, 124 S.W.2d 636, 639; State ex rel. Lovell v. Tinsley, Mo.App., 236 S.W.2d 24; see State ex rel. Cainsville Reorganized School Dist. No. 1 of Harrison County v. Tomes, Mo.App., 299 S.W.2d 892; see cases in footnote 11.

It was, and is, the duty of Von Connor to announce the result of the balloting, because the law specifically commanded that he do so. This was the means whereby the results of the election became fixed, certain, and known. The duty is similar to that which was commanded of the Speaker of the House in State ex rel. Donnell v. Osburn, 347 Mo. 469, 147 S.W. 2d 1065, 136 A.L.R. 667; and it is analogous to the duty of the clerk or board of canvassers, or other officers, in casting up and certifying the results of an election.[11] There were no facts for Connor to interpret, no discretion to exercise. The question of law (as to whether absentee ballots can be cast at any common school election) is purely a judicial one, and strictly judicial questions are reserved to the courts.[12]

Since the respondent Connor has not *yet* done that which the law commands him to do, i. e., fix the result of the election by announcing the results, the fact that time has passed should not interfere with the command of a court to proceed with his duty. In this respect the courts have often proceeded in accordance with the old maxim, "better late than never."[13]

As to the second command of the writ: We nowhere find any provision in the law making it the duty of the members of the board to keep or certify the minutes of the special election. It was the duty of secretary Bilyeu. In view of the fact that she and the chairman and members of the board were obviously engaged in a concert of action to pry Fairview into Maries by use of the so-called absentee ballots as a tool (although we do not wish to imply that such was not in honest belief that absentee ballots were proper), and remembering that equitable principles are applied in mandamus, it should not be too difficult to apply the writ to her and her collaborators to add to the minutes to show what should have been shown and correct that which was incorrectly shown. Mandamus is applicable to compel the doing of that which is right (in this instance the completion of the minutes to state the correct result), though it may sometimes have the effect of rescinding that which was wrong. And where acts of public officers in respect to public rights are involved, the good faith and solemn belief of the officer should not be concerned where there has been an abuse of discretion accomplished by disobedience of the law.[14] To hold otherwise would be to surrender the functions of the judiciary to the administrative.

A more serious question is involved in the third command of the writ, which requires the directors of Maries to deliver to

---

11. As in State ex rel. Steadley v. Stuckey, 78 Mo.App. 533, 543; State ex rel. Lovell v. Tinsley, Mo.App., 236 S.W.2d 24, 27; State ex inf. Anderson ex rel. Boothe v. Moss, 187 Mo.App. 151, 172 S.W. 1180; State ex rel. Holmes v. Kernes, 180 Mo. App. 355, 167 S.W. 1080; State ex rel. Metcalf v. Garesche, 65 Mo. 480; State ex rel. Averill v. Baird, 217 Mo.App. 362, 278 S.W. 416; State ex rel. Broadhead v. Berg, 76 Mo. 136; State ex rel. Nick v. Edwards, Mo., 260 S.W. 454; State ex rel. Bland v. Rodman, 43 Mo. 256; Barnes v. Gottschalk, 3 Mo.App. 111, 120; see State ex rel. Dunbar v. Hohmann, Mo.App., 248 S.W.2d 49; McQuillin, Municipal Corporations, 3rd ed., vol. 4, § 13.21; 55 C.J.S. Mandamus § 142i(1), p. 241; 29 C.J.S. Elections § 237 p. 340; State ex rel. Beach. v. Sutton, 3 Mo.App. 388, 397.

12. State ex rel. Bland v. Rodman, 43 Mo. 256, 260; State ex rel. Holmes v. Kernes, 180 Mo.App. 355, 167 S.W. 1080; State ex rel. Folkers v. Welsch, 235 Mo.App. 15, 124 S.W.2d 636, 640; State ex rel. Jones v. Cook, 174 Mo. 100, 73 S.W. 489, 494; see 55 C.J.S. Mandamus, § 132b, p. 219.

13. State ex rel. Sisson v. Felker, Mo.App., 336 S.W.2d 419; State ex rel. Reyburn v. Ringo, 42 Mo.App. 115; State v. Mackin, 41 Mo.App. 99.

14. State ex rel. Lovell v. Tinsley, Mo.App., 236 S.W.2d 24, 29; State ex rel. Averill v. Baird, 217 Mo.App. 362, 278 S.W. 416; State ex rel. Bland v. Rodman, 43 Mo. 256; see State ex rel. Wells v. Mayfield, 365 Mo. 238, 281 S.W.2d 9. Compare, however, State ex rel. Hagerman v. Drabelle, Mo., 191 S.W. 691.

the directors of Dixon all of the books, property, money, et cetera, of former Fairview.

A fixed and certain rule of public policy is that when a public body has, under color of authority, assumed to exercise the powers of a public corporation of a kind recognized by law, so as to become at least a *de facto* corporation, the validity of its organization can be challenged only by direct proceeding in quo warranto by the state through its proper officers,[15] or, to be more specific, by the prosecuting attorney or the attorney general. Lane v. Finney, Mo.App., 274 S.W.2d 521, 523.

The same rule applies where such corporation "under color of law" extends its authority over additional territory,[16] although under certain conditions one district may sue another for a declaratory judgment determination as to which has priority in respect to jurisdiction over a certain area.[17]

Any command directed to the Maries board to deliver up the records, money, et cetera, of (former) Fairview district must necessarily be based upon the premise that it holds them illegally *because there was no valid annexation* and would, in effect, accomplish the dissolution of the (enlarged) district (or denial of its existence) by denying to Maries the ability to operate as to the territory comprising Fairview district. Therefore, *if* the enlarged Maries district had attained the legal status of a *de facto* district the writ of mandamus cannot serve and the only remedy is in quo warranto.

Appellants do not dispute the general principle in reference to *de facto* corporations as we have stated it but distinguish the cases cited heretofore by the fact that in each of them there were *an election in which the proposition carried and an announcement or certification of the election results*. What this contention really amounts to is that the Maries organization (as to extension over Fairview) never attained the dignity of a *de facto* organization because it was without color of law or election; that the Maries board acted to absorb and to assume authority without and in the absence of any election announced and certified by its proper election officials (and in reality *in the face of a record showing the annexation to have been*

15. State ex rel. Consolidated School Dist. No. 2, Clinton County, v. Hunt, Mo., 199 S.W. 944; Willard Reorganized Dist. No. 2 of Greene County v. Springfield Reorganized School Dist. No. 12 of Greene County, 241 Mo.App. 934, 248 S.W.2d 435, 439; Spiking School Dist. No. 71, De Kalb County, v. Purported Enlarged School District R–11, De Kalb County, 362 Mo. 848, 245 S.W.2d 13, 21; Spilker v. Bethel Special School Dist. of Shelby County, Mo.App., 235 S.W.2d 78, 80; State ex rel. Smith v. Gardner, Mo.App., 204 S.W.2d 319, 322; State ex rel. Burns v. Johnston, Mo., 249 S.W.2d 357; Schmidt v. Goshen School Dist. No. 12, Cape Girardeau County, Mo.App., 250 S.W.2d 834; Barnes v. City of Kirksville, 266 Mo. 270, 180 S.W. 545, 546; State ex rel. Gainsville Reorganized School Dist. No. 1 of Harrison County v. Tomes, Mo.App., 299 S.W.2d 892; Walker Reorganized School District R–4 v. Flint, Mo.App., 303 S.W.2d 200, 205; City of Salem ex rel. Roney v. Young, 142 Mo.App. 160, 125 S.W. 857, 860; see State ex rel. Consolidated School Dist. No. 1, Mississippi and New Madrid Counties, v. Jones, 320 Mo. 353, 8 S.W.2d 66; 136 A.L.R. 1342, anno.

16. Spilker v. Bethel Special School Dist. of Shelby County, Mo.App., 235 S.W.2d 78, 79; City of Salem ex rel. Roney v. Young, 142 Mo.App. 160, 125 S.W. 857; Schmidt v. Goshen School Dist. No. 12, Cape Girardeau County, Mo.App., 250 S.W.2d 834; Lane v. Finney, Mo.App., 274 S.W.2d 521.

17. Spiking School Dist. No. 71, De Kalb County, v. Purported Enlarged School District R–11, De Kalb County, 362 Mo. 848, 245 S.W.2d 13; Walker Reorganized School District R–4 v. Flint, Mo.App., 303 S.W.2d 200; State ex rel. Burns v. Johnston, Mo., 249 S.W.2d 357; see Willard Reorganized School Dist. No. 2 of Greene County v. Springfield Reorganized School Dist. No. 12 of Greene County, 241 Mo.App. 934, 248 S.W.2d 435.

*defeated*), and thus it was only a usurper. The contention merits careful consideration.

■ The essentials of a *de facto* municipal corporation are often stated to be a valid statute authorizing incorporation, an organization in good faith under such statute, a colorable compliance with such statute, and an assumption of corporate powers,[18] or, as some Missouri cases have said, a bona fide attempt to organize, a colorable compliance with statutory requirements (or organization under "color of law"), and an actual user or exercise of corporate powers in pursuance of such law and attempted organization,[19] although there are statements in some Missouri cases which indicate that all that is necessary to a *de facto* organization is "any actual organization of the municipality in ostensible possession and in the exercise of municipal powers * * *" City of Salem ex rel. Roney v. Young, 142 Mo.App. 160, 125 S.W. 857, 859–860.[20] We think the true rule is there must be more than mere user of powers. There must be organization under color of law. A. W. Mendenhall Co. v. Booher, 226 Mo.App. 945, 48 S.W.2d 120. The "color of law" may consist of an election or appointment, a holding over, or simple acquiescence of the public for so long as to raise the presumption of a color-able right.[21] But this color of law (or "color of election") can be the appearance or semblance without substance of legal right.[22] And it is said that an illegal election may furnish the necessary color where such election is consistent with an honest misapprehension of the law and not evidence of a palpable disregard of its provisions.[23]

The attack upon the organization of the enlarged Maries district is not based upon some defect, irregularity or invalidity in the calling or holding of the Fairview election. In such instances it is the policy of the law to uphold, where possible, the expressed will of the voters and to prevent such expression of will to be defeated by the mistake, oversight or wrongdoing of the officials.[24] In this instance the question arises because of the manipulation and interpretation of *the result of such election* so as to accomplish a purpose which actually defeats the expressed will of the lawful voters. *This appears upon the face of the proceedings, including the very minutes upon which the Maries board undertook to organize.*

A well-recognized exception to the general rule is that where the organization is void *ab initio* and this voidness appears unmistakably *upon the face of the record* without necessity of inquiry or extraneous

18. 37 Am.Jur., Municipal Corporations, § 11, p. 630; McQuillin, Municipal Corporations, vol. 1, § 3.48; 62 C.J.S. Municipal Corporations § 30, pp. 106–107; Yokley on Municipal Corporations, vol. 1, § 19, p. 39.

19. Pearson Drainage Dist. v. Erhardt, 239 Mo.App. 845, 201 S.W.2d 484, and cases cited at page 488; see also 11 Words and Phrases, *de facto* corporations, p. 489; A. W. Mendenhall Co. v. Booher, 226 Mo.App. 945, 48 S.W.2d 120.

20. See State ex rel. Buckley v. Thompson, 323 Mo. 248, 19 S.W.2d 714, 719; Fleming v. Mulhall, 9 Mo.App. 71, 73.

21. State ex rel. City of Republic v. Smith, 345 Mo. 1158, 139 S.W.2d 929; Alleger v. School Dist. No. 16, Newton County, Mo.App., 142 S.W.2d 660; 43 Am.Jur.,

Public Officers, § 476, p. 230; see 11 Words and Phrases, Color of right, p. 505; State ex rel. Beach v. Sutton, 3 Mo. App. 388, 402; Perkins v. Fielding, 119 Mo. 149, 24 S.W. 444, 446; Fort Osage Drainage Dist. of Jackson County v. Jackson County, Mo., 275 S.W.2d 326, 331.

22. 15 C.J.S. Color of law, p. 235; Black's Law Dictionary, 4th ed., p. 331.

23. 43 Am.Jur., Public Officers, § 480, p. 233. However, the cases cited in support of such statement were not cases in which the *result* of the election, plain on its face, was misconstrued.

24. American Legion Phillips Post v. City of Malden, Mo.App., 330 S.W.2d 189, and cases at loc. cit. 191; State ex rel. Brown v. Cape, Mo.App., 266 S.W.2d 45.

evidence, then the organization does not attain *de facto* status and is subject to attack directly or collaterally by the individual in any action in which its existence is properly in issue.[25] In this instance we cannot concede that the good faith belief of the respondents as to *the legal result* of the election can override the actual result which did then and does now plainly appear on the face of the record. They could not make absentee votes valid simply by believing or wishing them to be valid. Mistakes of law on the part of officials which change the plainly appearing results of an election should not be permitted to deprive the citizens of their rights.

Since it plainly appears from the respondents' own records that the majority of the lawful votes cast upon the question were opposed thereto, the organization in response thereto was without semblance or color of legal right. The attempt to organize Maries into the enlarged district was void in its inception and the district did not attain the status of a *de facto* organization because it had no foundation in the beginning, either actual or colorable. This being the case, the respondents who hold the books and records of the Fairview district hold them only as usurpers and there is no reason why they should not be required to deliver them to those having the actual right to possession.

Since Fairview seems to have become a part of Dixon by virtue of the election of April 21 and organization thereunder, it would seem that the directors of that district are the ones entitled to possession of the records, and the duty to deliver

them is ministerial. State ex rel. Smith v. Gardner, Mo.App., 204 S.W.2d 319.

It is therefore ordered that the judgment be reversed and the cause is remanded with directions that the order quashing the alternative writ be set aside and judgment be entered making such writ peremptory.

STONE, P. J., and McDOWELL, J., concur.

25. Yokley on Municipal Corporations, vol. 1, § 21, p. 43; 13 A.L.R.2d anno., § 6, p. 1292; Pearson Drainage District v. Erhardt, 239 Mo.App. 845, 201 S.W.2d 484; Granby Mining and Smelting Co. v. Richards, 95 Mo. 106, 8 S.W. 246, 248; Inter-River Drainage Dist. of Missouri v. Henson, Mo.App., 99 S.W.2d 865; State ex rel. Gregory v. Ohio and Illinois Mineral Land Company, 84 Mo.App. 32, 38, 39; 95 Mo.App. 349, 69 S.W. 601; see Garden of Eden Drainage Dist. v.

Bartlett Trust Co., 330 Mo. 554, 50 S.W. 2d 627, 84 A.L.R. 1078; 18 C.J.S. Corporations § 87, p. 487; 13 Am.Jur., Corporations, § 60, p. 203; A. W. Mendenhall Co. v. Booher, 226 Mo.App. 945, 48 S.W. 2d 120. Such was the effect of our holding in Willard Reorganized School Dist. No. 2 of Greene County v. Springfield Reorganized School Dist. No. 12 of Greene County, 241 Mo.App. 934, 248 S.W.2d 435, 442, in regard to the first election held in respect to Ritter district.